PRESENT: All the Justices

COMMONWEALTH OF VIRGINIA, EX REL.
FAIR HOUSING BOARD

v.      Record No. 131806

WINDSOR PLAZA CONDOMINIUM
ASSOCIATION, INC., ET AL.                    OPINION BY
                                   JUSTICE S. BERNARD GOODWYN
MICHAEL FISHEL, ET AL.                    December 31, 2014

v.      Record No. 131817

WINDSOR PLAZA CONDOMINIUM
ASSOCIATION, INC.

               FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
                         Joanne F. Alper, Judge

     In these consolidated appeals, we consider various issues

arising under the Virginia Fair Housing Law, Code § 36-96.1 et

seq. (VFHL), and the Federal Fair Housing Amendments Act of

1988, 42 U.S.C. § 3601 et seq. (FHAA).

                              Background

     On March 4, 2009, Michael Fishel (Fishel) filed

complaints with the Virginia Fair Housing Board (FHB) and the

United States Department of Housing and Urban Development

(HUD), alleging that Windsor Plaza Condominium Association

(Windsor Plaza) had discriminated against him in violation of

the VFHL and the FHAA.  HUD transferred Fishel's complaint to

the FHB.

     On May 28, 2010, the FHB, after an investigation,

determined that reasonable cause existed to believe that

Windsor Plaza had engaged in a "discriminatory housing practice . . . in violation of . . . Code § 36-96.3(B)(ii)." Pursuant to Code § 36-96.14, the FHB referred the charge to the Attorney General on June 1, 2010.

On June 30, 2010, the Office of the Attorney General, on behalf of the Commonwealth, filed a complaint against Windsor Plaza in the Circuit Court of Arlington County. The complaint alleged that Windsor Plaza had violated Code § 36-96.3(B)(ii) by failing "to make reasonable accommodations in rules, practices, policies, or services [that were] necessary to afford [Fishel] equal opportunity to use and enjoy [his] dwelling."

On November 23, 2010, Fishel and his wife Eleanor (collectively "Fishels") moved to intervene in the Commonwealth's lawsuit pursuant to Code § 36-96.16(B). They also lodged a "Complaint in Intervention" with the court on the same date. In their Complaint in Intervention, the Fishels alleged, as had the Commonwealth, that Windsor Plaza had violated the VFHL by refusing their request for a reasonable accommodation.

The Fishels also alleged additional causes of action. They alleged that Windsor Plaza had discriminated against them in violation of Code §§ 36-96.3(A)(8) and (9), and 42 U.S.C. §§ 3604(f)(1), (2) and (3)(B). The circuit court granted the

2

Fishels' motion to intervene and deemed their Complaint in Intervention filed on January 28, 2011.

Windsor Plaza filed a plea in bar to the Fishels' intervening complaint, arguing that the Fishels' new state and federal fair housing claims were barred by the applicable statutes of limitations.

On April 5, 2012, pursuant to a court order granting the Commonwealth leave to join "as additional defendants to this action the . . . persons vested with the right to use the four limited common element parking spaces in the Windsor Plaza Condominium residential parking garages that are labeled 'HC' [i.e., handicapped] on the Windsor Plaza site plan and any person that has a security interest in those four 'HC' parking spaces," the Commonwealth filed a second amended complaint. It added eight individuals who owned interests in the four parking spaces as defendants (collectively "individual parking space owners").[1] Not only did the Commonwealth add these individuals as owners of the controverted parking spaces, it also alleged that the individual parking space owners had violated the VFHL by parking in the disabled parking spaces

---

[1] The Commonwealth named Lois Ann Rossi, Edward and Virginia Scruggs, Winston and Maureen Moore, Alan and Kathleen Hickling, and Countrywide Home Loans, Inc. as additional defendants. Countrywide Home Loans, Inc. holds an interest in Alan and Kathleen Hickling's handicapped parking space by virtue of a deed of trust.

that had been deeded to them with the purchase of their condominiums in a manner inconsistent with the parking spaces' designations on the site plan. The complaint stated, "This non-conforming use contributes to the Defendant Association's refusal to make a reasonable accommodation as requested by the Fishels."

Lois Ann Rossi (Rossi), one of the individual parking space owners, filed a plea in bar to the Commonwealth's second amended complaint, asserting that the statute of limitations in Code § 36-96.16(A) barred the Commonwealth's claim against her and the other individual parking space owners.

The circuit court scheduled a hearing to address Windsor Plaza's special plea concerning the Fishels' complaint and Rossi's special plea concerning the Commonwealth's second amended complaint. After a hearing on the pleas in bar, the circuit court sustained Windsor Plaza's plea in bar to the Fishels' complaint. It also sustained Rossi's plea in bar and dismissed the Commonwealth's claims against all of the individual parking space owners as being barred by the applicable statute of limitations.

On March 4, 2013, the parties proceeded to trial on the claim that Windsor Plaza violated Code § 36-96.3(B)(ii) by failing to make reasonable accommodations in rules, practices, policies or services that were necessary to afford Fishel

4

equal opportunity to enjoy his dwelling.  At the close of the Commonwealth's case-in-chief, Windsor Plaza moved to strike the Commonwealth's evidence and for summary judgment.  The circuit court granted the motion.

At a later hearing to consider Windsor Plaza's requests for attorney's fees, the circuit court determined that sovereign immunity did not bar Windsor Plaza's request for attorney's fees and costs against the Commonwealth pursuant to Code § 36-96.16(D).  Nevertheless, the court exercised its discretion and declined to award Windsor Plaza attorney's fees against the Commonwealth.  The court also declined to award Windsor Plaza attorney's fees against the Fishels.

The Commonwealth and the Fishels filed separate appeals, which are both addressed in this opinion.  Windsor Plaza assigns cross errors to the circuit court's denial of its request for the award of attorney's fees against the Commonwealth and the Fishels.

### Facts

Windsor Plaza Condominium is located in Arlington County and is comprised of two condominium buildings, each with underground parking garages.  When the condominium was first built, parking spaces in these garages were general common

elements.[2]  The site plan for the buildings notes four parking

spaces for use by disabled persons.  Those parking spaces were

designated as "HC" on the site plan.

In 1995, the developer of Windsor Plaza Condominium

executed an "Amendment to Condominium Instruments" document.

The amendment allowed the developer to assign the previously

general common element parking spaces as limited common

element[3] parking spaces.  Pursuant to the amendment, the

developer deeded every parking space in the condominium's

underground garages, including the four parking spaces

designated for use by disabled persons (hereinafter "disabled

parking spaces"), to individual unit owners "as a limited

common element for the exclusive use of the unit owner of such

condominium unit."

Fishel suffers from "severe osteoarthritis" and must use

a wheelchair.  In July 2007, the Fishels purchased a

condominium unit in the Taylor Street Building of Windsor

Plaza Condominium.  The Fishels received a "resale package,"

which they reviewed carefully for two days before purchasing

their unit.  In the resale package, a diagram of the parking

_____

[2] "Common elements" are "all portions of the condominium
other than the units."  Code § 55-79.41.

[3] A "limited common element" is "a portion of the common
elements reserved for the exclusive use of those entitled to
the use of one or more, but less than all, of the units."
Code § 55-79.41.

6

garages showed four disabled parking spaces.  The documents in the resale package also indicated that garage parking spaces at the condominium were limited common elements and that the developer had already assigned all of the parking spaces to individual unit owners.

Before buying their condominium unit, the Fishels visited the site and looked at the unit and underground parking garage.  The Fishels saw the parking space that would be purchased with their condominium.  They testified at trial that they knew the space was not a disabled parking space and that "[it] wasn't going to meet [their] needs."  The Fishels did not inquire about the availability of disabled parking spaces in the garage before purchasing their condominium unit.

Soon after purchasing their condominium unit, the Fishels contacted Joseph Tilton (Tilton), Windsor Plaza's building manager, and informed him that Fishel was unable to park his van in their parking space.  Tilton advised the Fishels to park in one of the disabled parking spaces, which they did "a couple times," but the Fishels were soon informed that they could not park in that space because it belonged to another condominium unit owner.

On July 30, 2007, the Fishels emailed Tilton, asking for "a larger parking space" in a better location.  Windsor Plaza's Board of Directors (the Board) considered their

request at a board meeting, and Tilton relayed the Board's response to the Fishels by email on August 23, 2007:

> The Board of Directors reviewed your request for a larger parking space at last night's meeting.  As all existing garage spaces are individually owned by unit owners, assigning a different parking space to your residence is beyond the authority of the Board.  This does not preclude you from advertising your interest in trading parking spaces with another owner.  If you would like to draft a flyer announcing your need for a larger space, we would be happy to post copies on both bulletin boards.  Such a notice may facilitate an exchange of spaces, either as a casual agreement or as a permanent reassignment, based on the preferences of all parties involved.
>
> Please contact us should you have any further concerns.

The Fishels responded to Tilton's August 23, 2007 email and asserted Fishel's "right . . . to park in a handicapped-designated space," but they indicated that they were reluctant to "go this route."  The Fishels' email concluded, "Please ask the Board to review this issue again in an expedited manner. We need a parking space that we can actually use."

The next email from Tilton, dated September 12, 2007, related that the Board had met again and that "[a] copy of your request is being sent to the Condominium's counsel so he may instruct us in how to best accommodate your needs."

During the following months, the Fishels inquired periodically about the status of their request.  On May 7, 2008, Windsor Plaza's attorney, Raymond Diaz (Diaz), informed

8

the Fishels by letter that Windsor Plaza could not force any of the individual parking space owners to trade with them. Diaz asserted that "it has proven impossible for the Association to persuade the owner of the larger space to conclude an arrangement permitting you the use of the larger garage parking space."

In the same letter, Diaz offered to help the Fishels secure approval from the county to reserve a parking space on the street outside their condominium building. The Fishels rejected this proposal because in order to park on the street, Fishel would have to exit his car into traffic. Moreover, the curb was too steep, and the nearest entrance door was not handicap-accessible.

Diaz wrote another letter dated August 10, 2009, informing the Fishels that the owners of one of the disabled parking spaces were willing to enter into a licensing agreement that would allow the Fishels to use the disabled parking space. The Fishels did not accept this offer because, in the proposed agreement, the parking space owners reserved a right to reclaim the disabled parking space if they sold their condominium or if at some point they had a tenant who needed the disabled parking space.

On March 4, 2009, the Fishels filed complaints with the FHB and HUD. Thereafter, an investigator from the FHB visited

9

the condominium building.  Fishel testified that while he was in the garage with the investigator, Tilton walked by, and Fishel raised with Tilton the idea of converting a bicycle storage space, located in the garage, into an accessible parking space.  Tilton expressed concern that doing so would be too expensive.  Fishel testified that he offered to pay for the "disabled logo and everything."  The circuit court found that Fishel did not present any evidence that this option was ever presented to the Board or its counsel.

Analysis

A.    The Commonwealth's Appeal (Record No. 131806)

The Commonwealth assigns error to the rulings of the circuit court in (1) holding that the statute of limitations barred the Commonwealth's action against the individual parking space owners; (2) ruling that the Commonwealth's evidence supported a claim for a reasonable modification instead of a reasonable accommodation; (3) granting Windsor Plaza's motion to strike the Commonwealth's evidence of reasonable accommodation; and (4) ruling that Windsor Plaza's request for attorney's fees under Code § 36-96.16(D) was not barred by the doctrine of sovereign immunity.  Windsor Plaza assigns cross error to the circuit court's refusal to exercise its discretion to award Windsor Plaza attorney's fees and costs against the Commonwealth.

10

### 1. Necessary Parties

The Commonwealth argues that the circuit court erred in ruling that the statute of limitations barred its action against the individual parking space owners. It claims that the use of disabled parking spaces by unit owners who are not disabled is a "continuing violation" and that Windsor Plaza created restrictive covenants running with the land, which resulted in negative easements on the disabled parking spaces. The Commonwealth notes that the Condominium's Policy Resolution No. 7[4] prohibits parking in disabled spaces without a disabled license plate or placard and concludes that to the extent that non-disabled unit owners park in the disabled parking spaces they own, there is a continuing violation that extends the statute of limitations in Code § 36-96.16(A).

In its prayer for relief, the Commonwealth seeks both a declaratory judgment and a permanent injunction requiring those with exclusive rights to use the four parking spaces identified as "HC" parking spaces to make those spaces

---

[4] Windsor Plaza's parking policy (Policy Resolution No. 7) includes a provision stating, "No vehicles shall be parked in any General Common Element spaces that are reserved for handicap parking except vehicles displaying current handicap placards or license plates." Policy Resolution No. 7 also authorizes the Board "from time to time and as available, [to] designate General Common Element parking spaces for special usage purposes (such as handicap parking spaces to accommodate disabled residents)."

11

available for use by all disabled residents.  The circuit court ruled that the individual parking space owners were necessary parties to the Commonwealth's action against Windsor Plaza.  In response thereto, the Commonwealth was allowed to file the second amended complaint naming the individual parking space owners as defendants.  Rossi then filed a special plea of the statute of limitations, and the circuit court sustained that special plea and entered an order determining that the Commonwealth's actions against all of the individual parking space owners were barred by the applicable statute of limitations.

Rossi asks this Court to dismiss the Commonwealth's assignment of error concerning the circuit court's ruling on her special plea because the Commonwealth has not joined all of the individual parking space owners in this appeal.  Of the eight individual parking space owners it named as defendants in its second amended complaint, the Commonwealth has only named Rossi in its appeal.

The Commonwealth does not assign error to the circuit court's determination that each of the individual parking space owners was a necessary party; therefore, this ruling has become "the law of the case and is binding on appeal."  See Maine v. Adams, 277 Va. 230, 242, 672 S.E.2d 862, 869 (2009).  Because the Commonwealth alleges that the individual parking

space owners all violated the VFHL and the relief sought by the Commonwealth involves the property interests of all of the individual parking space owners, they each have an interest in resisting the Commonwealth's claim against them.  An appellant's failure to join a necessary party in the appeal compels dismissal of the appeal.  Asch v. Friends of the Cmty. of Mount Vernon Yacht Club, 251 Va. 89, 91, 465 S.E.2d 817, 818-19 (1996).  Because the Commonwealth has failed to join all the individual parking space owners as parties in its appeal, we will dismiss the Commonwealth's appeal concerning the circuit court's ruling on the plea in bar filed by Rossi without further consideration.

> 2.    Modifications and Accommodations under
>       Code §§ 36-96.3(B)(i) and (ii)

In support of its claim that Windsor Plaza discriminated against Fishel by failing to make reasonable accommodations in rules, practices, policies or services that were necessary to afford him equal opportunity to use and enjoy his dwelling, the Commonwealth presented evidence that the Fishels mentioned to Tilton that there was a common element bicycle storage area in the parking garage that was large enough to be converted into a parking space for Fishel.  The circuit court ruled that such request constituted a reasonable modification request rather than a request for a reasonable accommodation.

13

The Commonwealth asserts that the circuit court erred in ruling that the request for the creation of the disabled parking space was not a request for an accommodation under Code § 36-96.3(B)(ii).  According to the Commonwealth, parking is a service, and Fishel sought an accommodation in the "rules, practices, and policies involving the provision of that service."  The Commonwealth claims that modifications involve "structural changes" while accommodations involve "cosmetic changes" and that converting the bicycle space into a disabled parking space for Fishel would require only cosmetic changes.  The Commonwealth further argues that Windsor Plaza's Policy Resolution No. 7 explicitly authorizes the Board to convert a common elements area, such as the bicycle space, into a limited common element parking space to accommodate the needs of a disabled person.  Hence, because the Fishels' request to convert the bicycle space into an accessible parking space required cosmetic changes and an alteration in Windsor Plaza's parking policy, the Commonwealth concludes that its evidence supported a reasonable accommodation claim under Code § 36-96.3(B)(ii).

According to Windsor Plaza, parking is not a service at the condominium because all parking spaces are limited common elements and are assigned to individual unit owners.  Windsor Plaza argues that the circuit court correctly determined that

14

the Commonwealth's evidence concerning the possible conversion of the bicycle space supported a cause of action for a reasonable modification because a "modification" is made to "premises," while an "accommodation" is made to "rules, policies, practices, or services."

Whether the Commonwealth's evidence supported a cause of action for failure to provide a reasonable accommodation under Code § 36-96.3(B)(ii) requires statutory interpretation of the VFHL.  This Court reviews a trial court's statutory interpretation de novo, as a question of law.  Collelo v. Geographic Servs., Inc., 283 Va. 56, 66, 727 S.E.2d 55, 59 (2012).  The primary goal of the Court in interpreting statutes is to determine the General Assembly's intent. Sheppard v. Junes, 287 Va. 397, 403, 756 S.E.2d 409, 411 (2014).  To do this, we examine the language contained in the statute itself, if unambiguous, and apply its plain meaning. See Rutter v. Oakwood Living Ctrs. of Va., Inc., 282 Va. 4, 10, 710 S.E.2d 460, 463 (2011).

The VFHL protects disabled persons from "unlawful discriminatory housing practices."  See Code § 36-96.3(A) (describing actions that qualify as "discriminatory housing practices").  Code § 36-96.3(A)(9) provides,

> It shall be an unlawful discriminatory housing practice for any person . . . [t]o discriminate against any person in the terms, conditions, or

15

privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith because of a handicap of . . . that person.

"Discrimination" is defined several ways in the VFHL. Relevant to this appeal, Code § 36-96.3(B)(i) states that "discrimination includes . . . a refusal to permit, at the expense of the handicapped person, reasonable modifications of existing premises occupied or to be occupied by any person if such modifications may be necessary to afford such person full enjoyment of the premises." Code § 36-96.3(B)(ii) provides that discrimination also includes "a refusal to make reasonable accommodations in rules, practices, policies, or services when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling."

The Commonwealth only asserts a violation of Code § 36-96.3(B)(ii). It insists that parking is a service and that the Fishels requested a reasonable accommodation in that service when they requested that Windsor Plaza convert the bicycle space into an accessible parking space for them. However, the plain meaning of the word "service" does not encompass the underground garage parking scheme at Windsor Plaza Condominium.

"Service" is "[l]abor performed in the interest or under the direction of others; specif[ically], the performance of

some useful act or series of acts for the benefit of another, usu[ally] for a fee." Black's Law Dictionary 1576 (10th ed. 2014). At the condominium, parking spaces have been assigned to individual unit owners as property rights appurtenant to their condominium units. These assigned parking spaces are limited common elements, which are "reserved for the exclusive use" of individual unit owners. Code § 55-79.41. Because parking spaces are forms of real property at the condominium, they are not acts or labor performed to benefit the unit owners, and thus parking is not a service under Code § 36-96.3(B)(ii).

To aid us in discerning the General Assembly's intent, we also look at surrounding words in the statute that can indicate a term's meaning. Newberry Station Homeowners Ass'n v. Board of Supervisors, 285 Va. 604, 619-20 & n.9, 740 S.E.2d 548, 556-57 & n.9 (2013). In Code § 36-96.3(B)(ii), "accommodations" is followed by "in rules, practices [and] policies," which indicates that accommodations involve exceptions to intangible standards, procedures and customs. On the other hand, the term "modifications" in Code § 36-96.3(B)(i) is followed by the phrase "of existing premises" and includes a requirement that the person requesting a modification pay for the modification. The context of Code §

17

36-96.3(B)(i) indicates that physical alterations of premises involve a modification rather than an accommodation.

We conclude the ruling of the circuit court is faithful to the plain language of Code §§ 36-96.3(B)(i) and (ii). There was no evidence at trial concerning what would be involved in changing the bicycle storage space into a parking space. However, the Commonwealth acknowledges that converting the bicycle space into an accessible parking space for Fishel would require physical alterations, although slight, to the premises. Consequently, the circuit court did not err in determining that the Commonwealth's evidence concerning the conversion of the bicycle space into an accessible parking space supported a cause of action under Code § 36-96.3(B)(i) for a reasonable modification rather than a cause of action under Code § 36-96.3(B)(ii) for a reasonable accommodation.

3. Sufficiency of the Evidence: Reasonable Accommodation Claim

The Commonwealth contends that it presented sufficient evidence of a violation of Code § 36-96.3(B)(ii) to survive Windsor Plaza's motion to strike the evidence. The Commonwealth asserts that the parties stipulated at trial that Fishel is disabled and that it is necessary for him to have an accessible parking space. According to the

18

Commonwealth, the evidence showed that Fishel asked for a larger parking space in a different location. The Commonwealth claims that in response Windsor Plaza proposed "two flawed solutions" and "ignored" Fishel's reasonable request to convert the bicycle storage space into an accessible parking space. It adds that even if all four disabled spaces were being used by disabled people,[5] Windsor Plaza would nevertheless be required under the VFHL to consider converting the bicycle space into an accessible parking space for the Fishels. The Commonwealth argues that the Fishels' request for an accessible parking space is reasonable because Windsor Plaza is required by law to provide disabled parking spaces.

By contrast, Windsor Plaza maintains that the evidence showed that it offered the Fishels a reasonable accommodation but that they rejected the offer. According to evidence at trial, Windsor Plaza negotiated a licensing agreement in which the owners of a disabled parking space would allow the Fishels to use their space. Windsor Plaza insists that it is not obligated to provide a permanent accommodation.

To assert a reasonable accommodation claim under the VFHL, the plaintiff bears the burden to prove by a

---

[5] There was no evidence presented at trial concerning whether the four designated "HC" spaces were being used by disabled individuals.

preponderance of the evidence that the requested accommodation is reasonable and necessary to give a disabled person the equal opportunity to use and enjoy housing. See Scoggins v. Lee's Crossing Homeowners Ass'n, 718 F.3d 262, 272 (4th Cir. 2013) (stating the elements of a reasonable accommodation claim under the FHAA). In the proceedings below, the parties agreed that Fishel is disabled and needs an accessible parking space in order to have an equal opportunity to enjoy his condominium unit, but they disagreed as to whether the Fishels requested a reasonable accommodation.

The Fourth Circuit has recognized several factors a court can use to determine whether an accommodation is reasonable:

> In determining whether the reasonableness requirement has been met, a court may consider as factors the extent to which the accommodation would undermine the legitimate purposes and effects of existing zoning regulations and the benefits that the accommodation would provide to the handicapped. It may also consider whether alternatives exist to accomplish the benefits more efficiently. And in measuring the effects of an accommodation, the court may look not only to its functional and administrative aspects, but also to its costs.

Bryant Woods Inn, Inc. v. Howard Cnty., 124 F.3d 597, 604 (4th Cir. 1997) (analyzing whether a request for an exception to zoning regulations was reasonable). An accommodation is not reasonable if it poses "undue financial and

administrative burdens or changes, adjustments, or modifications to existing programs that would be substantial, or that would constitute fundamental alterations in the nature of the program." See id. (citations and internal quotation marks omitted). This is a "fact-specific inquiry." Scoggins, 718 F.3d at 272.

The Fishels asked for a larger parking space in a different location. However, Virginia's Condominium Act permits the reassignment of limited common elements, such as the parking spaces at issue, only with the consent of all property owners affected by the reassignment. See Code § 55-79.57(A). We hold that requesting, as an accommodation, the reassignment of limited common element parking spaces belonging to private individuals is unreasonable because Windsor Plaza has no authority to confiscate property belonging to one unit owner and to reassign that property to another. See Groner v. Golden Gate Gardens Apartments, 250 F.3d 1039, 1046 (6th Cir. 2001) ("As a matter of law, the [neighbor's] rights did not have to be sacrificed on the altar of reasonable accommodation.") (alteration in original) (citation and internal quotation marks omitted).

The Commonwealth also argues that its evidence showed that Windsor Plaza failed to provide the Fishels with a reasonable accommodation by refusing to convert the bicycle

storage space into an accessible parking space. However, as stated previously, converting the bicycle space is a modification "of existing premises," not an accommodation "in rules, practices, policies, or services." Therefore, the Commonwealth's evidence concerning the bicycle space did not prove a request for a reasonable accommodation.

The Commonwealth's only evidence of an accommodation request refused by Windsor Plaza was that of reassigning one of the limited common element parking spaces to the Fishels. Because Windsor Plaza does not have the authority to reassign disabled parking spaces that are limited common elements without the consent of the owner of the parking space, this accommodation request was not reasonable, and we hold that the Commonwealth failed to satisfy its burden of proving that Windsor Plaza failed to provide a reasonable accommodation. Consequently, the circuit court did not err in granting Windsor Plaza's motion to strike the Commonwealth's evidence.

4. Sovereign Immunity

The Commonwealth argues that the circuit court erred in ruling that Windsor Plaza's claim for attorney's fees and costs against the Commonwealth pursuant to Code § 36-96.16(D) was not barred by the doctrine of sovereign immunity. Whether the Commonwealth is protected by sovereign immunity is a question of law that we review de novo. See City of

22

*Chesapeake v. Cunningham*, 268 Va. 624, 633, 604 S.E.2d 420, 426 (2004). Furthermore, whether the Commonwealth has waived sovereign immunity depends upon the proper interpretation of Code § 36-96.16(D), which is also a question of law reviewed de novo by this Court. See *Collelo*, 283 Va. at 66, 727 S.E.2d at 59.

"[T]he doctrine of sovereign immunity . . . is alive and well in Virginia." *Jean Moreau & Assocs. v. Health Ctr. Comm'n*, 283 Va. 128, 137, 720 S.E.2d 105, 110 (2012) (alteration in original) (citation and internal quotation marks omitted). "Sovereign immunity is a rule of social policy, which protects the state from burdensome interference with the performance of its governmental functions and preserves its control over state funds, property, and instrumentalities." Id. (citation and internal quotation marks omitted). Only the General Assembly can abrogate sovereign immunity on behalf of the Commonwealth. *Afzall v. Commonwealth*, 273 Va. 226, 230, 639 S.E.2d 279, 281 (2007). When it chooses to do so, the "waiver . . . cannot be implied from general statutory language but must be explicitly and expressly announced in the statute." Id. (citation and internal quotation marks omitted).

Code §§ 36-96.16 and -96.17 create causes of action in which the Commonwealth is the plaintiff in actions alleging

23

discriminatory housing practices.  In this case, the
Commonwealth filed its civil action against Windsor Plaza
pursuant to Code § 36-96.16(A), which mandates,

> Not later than thirty days after a charge is
> referred by the [FHB] to the Attorney General under
> § 36-96.14, the Attorney General <u>shall</u> commence and
> maintain a civil action seeking relief on behalf of
> the complainant in the circuit court for the city,
> county, or town in which the unlawful discriminatory
> housing practice has occurred or is about to occur.

(Emphasis added.)  Thus, after receiving a referral from the
FHB, the Commonwealth must "commence and maintain a civil
action."  <u>Id.</u>

On the other hand, under Code § 36-96.17, the
Commonwealth is given discretion in filing certain types of
fair housing claims.  <u>See</u> Code §§ 36-96.17(B) ("Whenever the
Attorney General has reasonable cause to believe that any
person or group of persons is engaged in a pattern or
practice of resistance to the full enjoyment of any of the
rights granted by this chapter, or that any group of persons
has been denied any of the rights granted by this chapter and
such denial raises an issue of general public importance, the
Attorney General <u>may</u> commence a civil action in the
appropriate circuit court for appropriate relief.") (emphasis
added); -96.17(C) ("In the event of a breach of a
conciliation agreement by a respondent, the [FHB] may
authorize a civil action by the Attorney General.  The

24

Attorney General <u>may</u> commence a civil action in any appropriate circuit court . . . .") (emphasis added).

Both Code §§ 36-96.16 and -96.17 enable a "prevailing party" to seek an award of attorney's fees. Code § 36-96.16(D), upon which Windsor Plaza relies in requesting attorney's fees and costs from the Commonwealth, states, "In any court proceeding arising under this section, the court, in its discretion, may allow the prevailing party reasonable attorney's fees and costs." Code § 36-96.17(E)(3) states in relevant part that a court may "[a]ward the prevailing party reasonable attorney's fees and costs. The Commonwealth shall be liable for such fees and costs to the extent provided by the Code of Virginia." Thus, Code § 36-96.17(E)(3) specifically states that "[t]he Commonwealth shall be liable for such fees and costs," while Code § 36-96.16(D) does not.

"[W]hen the General Assembly has used specific language in one instance, but omits that language or uses different language when addressing a similar subject elsewhere in the Code, we must presume that the difference in the choice of language was intentional." <u>Newberry Station Homeowners Ass'n</u>, 285 Va. at 616, 740 S.E.2d at 554 (citation and internal quotation marks omitted). Code § 36-96.16(A) imposes a mandatory governmental duty on the Attorney General to file a civil action on behalf of a complainant when the

FHB makes a reasonable cause determination and refers the matter to the Attorney General. In such an instance, the Attorney General is required by statute to file the civil action under the VFHL; the Commonwealth is without discretion under Code § 36-96.16 in filing the action. In interpreting the General Assembly's decision to omit the explicit waiver of sovereign immunity contained in Code § 36-96.17(E)(3) from Code § 36-96.16(D), we conclude that the General Assembly decided not to waive sovereign immunity in actions in which the Attorney General is performing a mandatory governmental function by filing an action pursuant to Code § 36-96.16.

Without an express waiver of sovereign immunity, Windsor Plaza cannot recover attorney's fees from the Commonwealth. Therefore, the circuit court erred in ruling that Windsor Plaza's claim for attorney's fees was not barred by the doctrine of sovereign immunity. However, because the circuit court decided not to impose attorney's fees or costs against the Commonwealth, such error was harmless. See Code § 8.01-678.

B.    The Fishels' Appeal (Record No. 131817)

The Fishels assign error to the rulings of the circuit court in (1) establishing the accrual date for their state and federal reasonable accommodation claims; (2) applying the statute of limitations period in Code § 36-96.18(B) to their

26

additional claims brought when they intervened; and (3) determining that the alleged violations of Code §§ 36-96.3(A)(8) and (9) and 42 U.S.C. §§ 3604(f)(1) and (2) were not continuing violations. Windsor Plaza assigns cross error to the circuit court's ruling denying its request for attorney's fees against the Fishels.

1. Accrual of State and Federal Reasonable Accommodation Claims

The Fishels argue that the circuit court erred in finding that their state and federal reasonable accommodation claims accrued on August 23, 2007. "A plea in bar presents a distinct issue of fact which, if proven, creates a bar to the plaintiff's right of recovery." Hilton v. Martin, 275 Va. 176, 179, 654 S.E.2d 572, 574 (2008). Whether the circuit court erred in finding that August 23, 2007, was the date of accrual of the Fishels' causes of action is a mixed question of law and fact that this Court reviews de novo. See Chalifoux v. Radiology Assocs. of Richmond, Inc., 281 Va. 690, 696, 708 S.E.2d 834, 837 (2011). This Court defers to the circuit court's findings of fact and "view[s] the facts in the light most favorable to" Windsor Plaza as the prevailing party. See id. However, we review the trial court's application of the law to facts de novo. See

27

Westgate at Williamsburg Condo. Ass'n v. Philip Richardson Co., 270 Va. 566, 574, 621 S.E.2d 114, 118 (2005).

Under both the VFHL and FHAA, a reasonable accommodation claim accrues upon "the occurrence or the termination of an alleged discriminatory housing practice." Code § 36-96.18(A); 42 U.S.C. § 3613(a)(1)(A). "[D]iscrimination includes . . . a refusal to make reasonable accommodations in rules, practices, policies, or services when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling . . . ." Code § 36-96.3(B)(ii); 42 U.S.C. § 3604(f)(3)(B). Thus, the Fishels' reasonable accommodation claims accrued when Windsor Plaza denied their request for a reasonable accommodation.

The parties dispute when Windsor Plaza denied the Fishels' request. The circuit court found that Windsor Plaza denied their request on August 23, 2007. However, the Fishels claim that after August 23, 2007, they engaged in an interactive process with Windsor Plaza and that their reasonable accommodation claims did not accrue until this interactive process concluded.

When a disabled person makes a request for a reasonable accommodation, the parties may engage in an interactive process. The purpose of this interaction between one who has requested a reasonable accommodation and the recipient of the

request is to arrive at a solution that is agreeable to both parties.  See Joint Statement of Dep't of Hous. & Urban Dev. & Dep't of Justice, Reasonable Accommodations Under the Fair Housing Act 7 (May 17, 2004).[6]  However, the interactive process does not change the date of accrual because such a process is not required and a reasonable accommodation claim accrues when the request is denied.[7]  Thus, the relevant question is when Windsor Plaza denied the Fishels' request, thereby triggering the statute of limitations for their reasonable accommodation claims.

On July 30, 2007, the Fishels asked for "a larger parking space" in a different location because of Fishel's disability.  After Windsor Plaza's Board considered the Fishels' request, it informed them by email on August 23,

---

[6] The Joint Statement is available at http://www.justice.gov/crt/about/hce/joint_statement_ra.pdf (last visited December 29, 2014).

[7] Our conclusion is reinforced by the recognition that parties may choose to forego the interactive process.  We note that federal courts disagree as to whether the interactive process is mandatory under the FHAA.  Compare Jankowski Lee & Assocs. v. Cisneros, 91 F.3d 891, 895 (7th Cir. 1996) ("If a landlord is skeptical of a tenant's alleged disability or the landlord's ability to provide an accommodation, it is incumbent upon the landlord to request documentation or open a dialogue.") with Lapid-Laurel, L.L.C. v. Zoning Bd. of Adjustment, 284 F.3d 442, 455-56 (3d Cir. 2002) ("Therefore, we hold that notwithstanding the 'interactive process' requirement that exists in the law of this court in the employment context under the Rehabilitation Act, . . . the FHAA imposes no such requirement on local land use authorities.") (citation omitted).

29

2007, that it was powerless to accommodate their request because all the parking spaces were limited common elements and deeded to other condominium owners. It stated that it could not reassign the disabled parking spaces. Thus, there is evidence to support the circuit court's finding that this email constituted Windsor Plaza's denial of the Fishels' request and that the Fishels' reasonable accommodation claims accrued on that date.

The Fishels argue alternatively that they renewed their request after receiving the August 23, 2007 email. They cite Tobin v. Liberty Mutual Insurance Co., 553 F.3d 121, 131 (1st Cir. 2009), a case concerning the Americans with Disabilities Act (ADA), in support of their position. In Tobin, the First Circuit considered an employee's reasonable accommodation claim against his employer. Id. at 124-25. The court acknowledged that the denial of a subsequent request for an accommodation could constitute a new discriminatory act for purposes of the statute of limitations if an employer commits a "new 'discrete act' of discrimination." Id. at 131. However, the First Circuit observed that when an employer denies a subsequent request simply seeking reversal or "modification" of a prior denial, the subsequent denial is not a new discrete act sufficient to extend the statute of limitations. See id. ("[A]n employee may not extend or

circumvent the limitations period by requesting modification or reversal of an employer's prior action.").

Even if law governing renewed requests for reasonable accommodations under the ADA applies to reasonable accommodations claims under the VFHL and FHAA, there is evidence to support the circuit court's finding that the Fishels did not renew their request. After the Board denied their request on August 23, 2007, the Fishels asked "the Board to review th[e] issue again in an expedited manner." This is a request for reconsideration of the Board's prior denial, not a renewed request that results in a new denial. Consequently, the Board did not commit a new discriminatory act after its initial denial on August 23, 2007.

The Fishels had to file their state reasonable accommodation claim within the longer of two years from the date of accrual or "180 days after the conclusion of the administrative process." See Code § 36-96.18(B). Two calendar years from the date of accrual fell on August 23, 2009, and 180 days from the conclusion of the FHB proceeding fell in late November 2010. See Ward v. Insurance Co. of N. Am., 253 Va. 232, 235, 482 S.E.2d 795, 797 (1997) (holding that Virginia statutes of limitations are calculated using "calendar years and not '365-day periods'"). The Fishels'

31

intervening complaint was not filed until January 28, 2011, after both statutory time periods had passed.

Likewise, the Fishels' federal reasonable accommodation claim was also barred. Even with the benefit of tolling while the administrative process was pending from May 4, 2009 until June 1, 2010, the federal two-year statute of limitations expired in September 2010. See 42 U.S.C. § 3613(a)(1)(B). Therefore, we hold that the circuit court did not err in finding that the Fishels' reasonable accommodation claims filed on January 28, 2011 were barred by the statute of limitations.

2. Intervention Pursuant to Code § 36-96.16

The Fishels contend that the circuit court also erred in applying the statute of limitations in Code § 36-96.18 to their claims because they intervened in the Commonwealth's action pursuant to Code § 36-96.16. They point out that under Code § 36-96.16(B) intervention is "as of right." The Fishels maintain that there is no statute of limitations for intervention under Rule 3:14 or Code § 36-96.16 and that circuit courts instead exercise their sound discretion in permitting intervention.

On the other hand, Windsor Plaza asks this Court to construe Code §§ 36-96.16 and -96.18 together. Windsor Plaza maintains that although Code § 36-96.16 allows the Fishels to

intervene, the statute of limitations period in Code § 36-96.18 applies to the Fishels' new claims because they are private parties and because no exception is carved out for intervenors.

The Fishels not only intervened in the action brought by the Commonwealth, they also filed an intervening complaint which raised additional causes of action that had not been raised by the Commonwealth in its complaint. Whether the statute of limitations in Code § 36-96.18 applies to the Fishels' civil action filed pursuant to Code § 36-96.16 requires statutory interpretation, which is a question of law that we review de novo. See Collelo, 283 Va. at 66, 727 S.E.2d at 59. "Statutes dealing with the same subject matter must be read together so as to adhere to the legislative intent underlying them and to permit them to operate together without conflict." McKinney v. Virginia Surgical Assocs., P.C., 284 Va. 455, 460, 732 S.E.2d 27, 29 (2012).

Code § 36-96.16(B) enables an "aggrieved person" to intervene in the Commonwealth's civil action: "Any aggrieved person with respect to the issues to be determined in a civil action [filed by the Attorney General after referral from the FHB] may intervene as of right." This subsection does not set forth a specific limitations provision for claims made

33

through intervention by aggrieved persons.  See Code § 36-96.16(B).

However, Code § 36-96.18(A), which permits "aggrieved person[s]" to file original civil actions alleging "discriminatory housing practice[s]," does contain a limitations period.  Subsection (B) provides,

> An aggrieved person may commence a civil action under § 36-96.18 A no later than 180 days after the conclusion of the administrative process with respect to a complaint or charge, or not later than two years after the occurrence or the termination of an alleged discriminatory housing practice, whichever is later.

Code § 36-96.18(B).  The statutory language gives no indication that an intervenor's civil action should be immune from the statute of limitations normally applicable to claims brought by aggrieved persons.  In fact, Code § 36-96.16(B) uses the same term, "aggrieved person," to describe the intervenor as is used in Code § 36-96.18(B) to describe the private party plaintiff.

We note that this Court has applied a statute of limitations in one statute to an action allowed to be filed in intervention pursuant to a different statute.  In Commonwealth Mechanical Contractors, Inc. v. Standard Federal Savings & Loan, 222 Va. 330, 332, 281 S.E.2d 811, 812 (1981), we held that the limitations period in Code § 43-17 applied to "a lienor's intervening petition in a suit to enforce a

34

mechanics' lien" filed pursuant to Code § 43-22.  The limitations period in Code § 43-17 applied to suits to enforce liens, but it did not expressly refer to Code § 43-22.  Id.  As noted by this Court, the "common history" of Code §§ 43-17 and -22 dictated they should "be interpreted in light of [each] other."  Id.  We observed that intervening in an existing action as a means of asserting new claims was "the equivalent of instituting a suit under Code § 43-17."  Id.

Like the statutes at issue in Commonwealth Mechanical Contractors, Code §§ 36-96.16 and -96.18 are interrelated. Pursuant to these statutes, an aggrieved person may choose to intervene in a civil action filed by the Attorney General alleging a discriminatory housing practice on behalf of the aggrieved person or file an original claim alleging a discriminatory housing practice on his or her own behalf. See Code §§ 36-96.16 (A) and (B); -96.18(A).  When an aggrieved person not only intervenes in a civil action, but also files a new claim not previously asserted, the applicable statute of limitations applies to that new claim. Therefore, we hold that the circuit court did not err in applying the statute of limitations in Code § 36-96.18 to the Fishels' additional claims brought in a new complaint filed upon intervention.

3.    Continuing Violations

Finally, the Fishels claim that the circuit court erred in determining that Windsor Plaza's alleged violations of Code §§ 36-96.3(A)(8) and (9) and 42 U.S.C. §§ 3604(f)(1) and (2) were not continuing violations.  They maintain that Windsor Plaza continues to discriminate against them in the sale of their condominium unit as well as continues to make housing unavailable by "operat[ing] a condominium premises that does not provide the accessible garage parking spaces required by [law]."  Because Windsor Plaza continues to operate a condominium that lacks handicap-accessible parking while benefitting from the payment of the Fishels' condominium fees, the Fishels argue that "the statute of limitations does not bar [their] claims" because Windsor Plaza's latest discriminatory act falls within the statute of limitations period.

Windsor Plaza responds that the violations alleged by the Fishels are continuing effects, not continuing violations.  Windsor Plaza contends that its alleged violations are the continuing effects of the developer's assignment of disabled parking spaces to individual unit owners and cannot extend the statute of limitations.

The circuit court's determination that the Fishels did not allege continuing violations presents a mixed question of

36

law and fact that this Court reviews de novo.  See Chalifoux,

281 Va. at 696, 708 S.E.2d at 837.  "In our review of the

circuit court's application of the law to the facts, we give

deference to the circuit court's factual findings and view

the facts in the light most favorable to . . . the prevailing

party below."  Id.

In addition to their reasonable accommodation claims,

the Fishels' complaint alleged that Windsor Plaza

discriminated against them in violation of Code §§ 36-

96.3(A)(8) and (9) and 42 U.S.C. §§ 3604(f)(1) and (2).  Code

§§ 36-96.3(A)(8) and (9) make unlawful the following

discriminatory housing practices:

> 8.  To refuse to sell or rent, or refuse to
> negotiate for the sale or rental of, or otherwise
> discriminate or make unavailable or deny a dwelling
> because of a handicap of (i) the buyer or renter,
> (ii) a person residing in or intending to reside in
> that dwelling after it is so sold, rented or made
> available, or (iii) any person associated with the
> buyer or renter;
>
> 9.  To discriminate against any person in the
> terms, conditions, or privileges of sale or rental
> of a dwelling, or in the provision of services or
> facilities in connection therewith because of a
> handicap of (i) that person, (ii) a person residing
> in or intending to reside in that dwelling after it
> was so sold, rented or made available, or (iii) any
> person associated with that buyer or renter.

See also 42 U.S.C. §§ 3604(f)(1) and (2) (containing

substantially similar provisions).

37

The continuing violation doctrine is one in "which acts occurring outside the statute of limitations may be considered when there is a 'fixed and continuing practice' of unlawful acts both before and during the limitations period." Scoggins, 718 F.3d at 271 (citation and internal quotation marks omitted).  One federal district court has explained the difference in continuing violations and continuing effects of past violations: "[A] continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation."  Moseke v. Miller & Smith, Inc., 202 F. Supp. 2d 492, 495 (E.D. Va. 2002) (citations and internal quotation marks omitted).

In Moseke, the court concluded that the inaccessible features of three condominium complexes were "more akin to a continuing effect rather than a continuing violation under the FHA[A]."  Id. at 507.  Because the plaintiffs alleged design and construction claims under the FHAA and VFHL, the court reasoned that the last discriminatory act occurred when the defendants completed construction of the complexes.  Id. The court was not swayed by the plaintiff's argument that the violation was ongoing because the condominiums continued to operate without disabled parking spaces.  Id. at 510.

In this case, the circuit court correctly determined that the Fishels did not allege continuing violations of Code

§§ 36-96.3(A)(8) and (9) and 42 U.S.C. §§ 3604(f)(1) and (2). The violations alleged by the Fishels — allowing disabled parking spaces to be assigned to residents as limited common elements without reserving a handicap-accessible parking space for the Fishels — occurred at one point in time. The Fishels' not being able to use a disabled parking space is a continuing effect of having assigned all the handicap-accessible parking spaces to other owners before the Fishels bought their condominium. Thus, the circuit court did not err in determining that the alleged discriminatory acts by Windsor Plaza are not continuing in nature but continuing in effect. Therefore, the circuit court did not err in sustaining Windsor Plaza's plea in bar to the Fishels' claims under Code §§ 36-96.3(A)(8) and 9 and 42 U.S.C. §§ 3604(f)(1) and (2).

4.    Windsor Plaza's Cross Error:
      Attorney's Fees

Windsor Plaza argues that the circuit court abused its discretion by refusing to award it attorney's fees against the Fishels. Windsor Plaza contends that the Fishels' claims were meritless. It maintains that the Fishels filed six untimely claims, greatly expanding the scope of their lawsuit compared to the Commonwealth's single claim. Windsor Plaza further asserts that the Fishels did not assert their claims

39

in good faith because they were aware that their assigned parking space was inadequate when they purchased it and because they "knew or should have known" that the remainder of the parking spaces in the underground garages were assigned to other unit owners.

The Fishels disagree that the VFHL authorizes an award of attorney's fees to a prevailing defendant. Furthermore, they insist that they asserted their claims in good faith and that the circuit court "properly weighed" each point raised by Windsor Plaza. The Fishels claim that they helped Windsor Plaza avoid extra expense by intervening in the Commonwealth's lawsuit instead of filing their claims separately. According to the Fishels, the circuit court "specifically found" that Fishel was entitled to an accommodation and that their claims were not meritless merely because the statute of limitations barred the claims.

This Court reviews a trial court's refusal to award attorney's fees for abuse of discretion. Lynchburg Div. of Soc. Servs. v. Cook, 276 Va. 465, 484, 666 S.E.2d 361, 370 (2008). A trial court may abuse its discretion by failing to consider a "relevant factor that should have been given significant weight"; by considering "an irrelevant or improper factor [and giving it] significant weight"; or by "commit[ting] a clear error of judgment." Robinson-Huntley

40

v. George Washington Carver Mut. Homes Ass'n, 287 Va. 425,
432, 756 S.E.2d 415, 420 (2014) (citation and internal
quotation marks omitted).  A trial court may also abuse its
discretion by basing its decision on an erroneous legal
conclusion.  Cook, 276 Va. at 484, 666 S.E.2d at 371.

Code § 36-96.16(D) states, "In any court proceeding
arising under this section, the court, in its discretion, may
allow the prevailing party reasonable attorney's fees and
costs."  A "prevailing party" is "[a] party in whose favor a
judgment is rendered, regardless of the amount of damages
awarded."  Sheets v. Castle, 263 Va. 407, 413, 559 S.E.2d
616, 620 (2002) (citation and internal quotation marks
omitted).  Because the circuit court granted Windsor Plaza's
plea in bar and entered judgment in its favor, it is a
"prevailing party" for purposes of Code § 36-96.16(D).

In denying Windsor Plaza's claim for attorney's fees,
the circuit court found that the Fishels asserted their
claims in good faith.  The circuit court noted that the FHB
found reasonable cause to believe Windsor Plaza had committed
a discriminatory housing practice and the Attorney General
filed a civil action based on the FHB's determination.
Furthermore, it found the Fishels reasonably chose to
intervene in the Commonwealth's suit rather than file a
separate lawsuit and asserted their federal and state claims

41

in the same action. The circuit court opined that their claims were not meritless simply because they were barred by the statute of limitations. Although the court acknowledged the expense Windsor Plaza had incurred in defending itself during the litigation, it pointed out that the policy behind fair housing laws seeks to encourage private enforcement.

The circuit court considered relevant factors and duly weighed them. Windsor Plaza fails to identify any improper factor or erroneous legal conclusion that the circuit court used in reaching its decision. Therefore, we cannot say that the circuit court abused its discretion in refusing to award attorney's fees to Windsor Plaza.

### Conclusion

For the reasons stated, we dismiss the Commonwealth's assignment of error claiming that the circuit court erred in dismissing "the four individual defendants" because the Commonwealth failed to join all of these defendant parties in its appeal. We affirm the circuit court's rulings that the evidence relating to conversion of the bicycle storage space into an accessible parking space supported a claim for reasonable modification under Code § 36-96.3(B)(i), rather than a claim for reasonable accommodation under Code § 36-96.3(B)(ii). We also affirm the circuit court's ruling granting Windsor Plaza's motion to strike. However, we hold

42

that although the error was harmless, the circuit court erred in ruling that Windsor Plaza's request for attorney's fees against the Commonwealth under Code § 36-96.16(D) was not barred by sovereign immunity.

As for the Fishels' appeal, we affirm the circuit court's sustaining of Windsor Plaza's plea in bar to the Fishels' additional claims because the statutes of limitations had expired when the Fishels filed their intervening complaint. The Fishels' claims do not concern continuing violations, and the claims accrued on August 23, 2007. Thus the statutes of limitations in Code § 36-96.18 and 42 U.S.C. § 3613(a)(1)(A) bar the Fishels' claims brought pursuant to Code §§ 36-96.3(A)(8) and (9) and 42 U.S.C. §§ 3604(f)(1), (2) and (3)(B). Finally, the circuit court did not abuse its discretion in refusing to award Windsor Plaza attorney's fees against the Fishels.

Record No. 131806 – <u>Affirmed in part, reversed in part, and final judgment.</u>

Record No. 131817 – <u>Affirmed.</u>