**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

JACOB SCOGGINS, an individual;
DAN SCOGGINS; DEBBIE SCOGGINS,

        *Plaintiffs-Appellants,*

        v.

LEE'S CROSSING HOMEOWNERS
ASSOCIATION, a Virginia
corporation and Property Owner's
Association; JACK H. MERRITT, JR.,
an individual,

        *Defendants-Appellees.*

No. 11-2202

JACOB SCOGGINS, an individual;
DAN SCOGGINS; DEBBIE SCOGGINS,

        *Plaintiffs-Appellees,*

        v.

LEE'S CROSSING HOMEOWNERS
ASSOCIATION, a Virginia
corporation and Property Owner's
Association; JACK H. MERRITT, JR.,
an individual,

        *Defendants-Appellants.*

No. 11-2373

Appeals from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Liam O'Grady, District Judge.
(1:10-cv-01157-LO-IDD)

Argued: March 20, 2013

Decided: May 17, 2013

Before NIEMEYER, MOTZ, and KEENAN, Circuit Judges.

_____

Affirmed in part, vacated in part and remanded by published opinion. Judge Keenan wrote the opinion, in which Judge Niemeyer and Judge Motz joined.

_____

**COUNSEL**

**ARGUED:** Charles Duke Ferguson, MARKO & MAGOLN-ICK, Miami, Florida, for Appellants/Cross-Appellees. Michael Sterling Dingman, REED SMITH, LLP, Falls Church, Virginia, for Appellees/Cross-Appellants. **ON BRIEF:** J. Damian Ortiz, THE JOHN MARSHALL LAW SCHOOL, Fair Housing Legal Clinic, Chicago, Illinois; Miguel M. de la O, DE LA O, MARKO, MAGOLNICK & LEYTON, Miami, Florida, for Appellants/Cross-Appellees. Richard D. Kelley, REED SMITH, LLP, Falls Church, Virginia, for Appellees/Cross-Appellants.

_____

**OPINION**

BARBARA MILANO KEENAN, Circuit Judge:

In this appeal, we consider the district court's summary judgment holding that the plaintiffs, Dan Scoggins, Debbie Scoggins, and their son Jacob Scoggins (collectively, the plaintiffs), were not entitled under the Fair Housing Amendments Act of 1988, 42 U.S.C. §§ 3601 through 3631 (the FHAA), to an accommodation and a modification that they

requested from the Lee's Crossing Homeowners Association (the HOA). The plaintiffs had requested: (1) a modification to add a ramp leading to the front door of their home for use by Jacob, who requires the use of a wheelchair; and (2) an accommodation to an HOA policy prohibiting the use of certain types of vehicles to allow Jacob to use an All-Terrain Vehicle (ATV) within the Lee's Crossing subdivision (Lee's Crossing or the community).

After the HOA failed to grant their requests, the plaintiffs filed a complaint against the HOA and Jack Merritt, Jr., a member of the HOA's board of directors (together, the defendants). The district court granted the defendants' motion for summary judgment, but denied their request for attorneys' fees and costs. The plaintiffs appeal from the district court's award of summary judgment to the defendants, and the defendants appeal from the court's denial of their request for attorneys' fees and costs.

Upon our review, we vacate the district court's holding on the merits of the modification request for the wheelchair access ramp, because that claim is not ripe. We affirm the district court's holding with respect to the accommodation request for permission to use an ATV, because that request was not "reasonable" within the meaning of the FHAA. We also affirm the district court's denial of the defendants' request for attorneys' fees and costs.

I.

Dan and Debbie Scoggins purchased a ten-acre lot in 2002 in Lee's Crossing, a subdivision in Loudoun County, Virginia, where they built a home in which they have resided for several years.[1] Dan and Debbie live with their 22-year-old son

---

[1]We view the facts in the light most favorable to the plaintiffs as the non-moving party. *PBM Prods., LLC v. Mead Johnson & Co.*, 639 F.3d 111, 119 (4th Cir. 2011).

Jacob, who requires the use of a wheelchair because he is partially paralyzed as a result of a car accident that occurred when he was a child.

All individuals purchasing property in Lee's Crossing are required to abide by the rules of the HOA and certain restrictive covenants (collectively, the covenants). The covenants require that homeowners obtain approval from the Lee's Crossing Architectural Review Board (the review board) for any changes that the owners seek to make affecting the external appearance of their property. During construction of their home, the plaintiffs were granted permission from the review board to build a walk-out basement to facilitate Jacob's access to the residence. The plaintiffs later installed a wheelchair ramp in their garage, which is attached at the main level to one end of their home, giving Jacob an additional means of entering the residence in his wheelchair.

The covenants also contain rules governing activities conducted on the common grounds of Lee's Crossing. These rules include a policy prohibiting the use of off-road vehicles such as ATVs on the common driveways and roads of the community.

The plaintiffs requested an exception to the HOA's policy prohibiting the use of ATVs (the ATV request). They made this request because the streets of Lee's Crossing are unpaved, making it difficult for Jacob to travel within the community using either his manual or power wheelchair.[2] The plaintiffs asserted that Jacob's use of an ATV would allow him to

---

[2]Jacob also owns a hand-powered tricycle that he sometimes uses for recreational purposes. The plaintiffs assert, however, that the tricycle is not an appropriate substitute for an ATV because Jacob experiences pain when he begins to operate the tricycle. Jacob also was issued a driver's license by the Commonwealth of Virginia, but the plaintiffs assert that it is not practical for him to use an automobile for short trips within the neighborhood.

accompany his family and friends on walks within the community.

In May 2009, Debbie Scoggins sent an email to representatives of the HOA, in which she asked that Jacob be allowed to use an ATV on the common roads of Lee's Crossing. At HOA meetings in July 2009 and September 2009, the members of the Lee's Crossing board of directors (the board of directors) discussed the ATV request, but "tabled" the request on each occasion pending the receipt of further details. However, the board members did not contact the plaintiffs to obtain these additional details. Further, although these board meetings were open to the public, the plaintiffs were not notified that the ATV request was scheduled to be discussed and they did not attend either meeting.

The ATV request remained dormant until August 26, 2010, when Debbie Scoggins sent an email to the property manager for Lee's Crossing, renewing the ATV request and expressing concern that the HOA had ignored the previous request. A representative of the board of directors replied on September 11, 2010, 16 months after the plaintiffs' initial ATV request, seeking additional information concerning the request. The plaintiffs did not respond to this inquiry.

About this same time, on September 20, 2010, the plaintiffs submitted a written request to the review board seeking permission to construct a ramp leading to the front door of their home (the ramp request).[3] The covenants require that homeowners planning such external construction submit a written application to the review board, containing "detailed plans and specifications," including the size and materials for the proposed construction.

---

[3]The plaintiffs had made verbal requests to Merritt in 2003 and 2007 seeking permission to construct the ramp, which Merritt immediately "denied" based on aesthetic concerns.

Under the covenants, the review board is allotted 30 days to respond to a written request.[4] The covenants also grant the review board "the unilateral right to request additional information as well as the right to reject any and all applications which are not complete."

The plaintiffs did not wait for a denial or the expiration of the 30-day period, but filed a complaint in the district court on October 13, 2010, which included a claim based on the "denial" of their ramp request. The review board later responded to the plaintiffs' ramp request in a letter dated October 18, 2010, which stated that the board denied the application "procedurally, as being incomplete." The review board also identified "numerous missing items in the application," and asked that those items be submitted. Finally, the letter stated that the review board's response was "not a substantive denial of a request for a second ramp at your house, but merely requires you to provide a complete application so the [HOA] can properly determine what you wish to construct."

In their amended complaint filed under the FHAA, the plaintiffs asserted that the defendants' failure to allow a reasonable modification of the plaintiffs' home, to add a front ramp (the ramp request claim), violated 42 U.S.C. § 3604(f)(3)(A). The plaintiffs further alleged that the defendants' refusal to permit a reasonable accommodation allowing Jacob to operate an ATV within the community (the ATV request claim) violated 42 U.S.C. § 3604(f)(3)(B). The plaintiffs sought monetary damages and injunctive relief directing the defendants to grant permission for construction of the front ramp and to approve the ATV request.

---

[4]Pursuant to the covenants, if the review board fails to act within the initial 30-day period, the homeowner may send a notice by certified mail to the board requesting action. If the review board fails to act within 30 days from receiving the certified notice, the request is deemed approved.

Upon completion of discovery, the defendants filed a motion for summary judgment.[5] The district court granted the defendants' motion, concluding that the plaintiffs' evidence failed to show that the ramp was "necessary," within the meaning of the FHAA. The court alternatively held that the ramp request claim was premature because the review board had not denied the ramp request but, rather, timely had informed the plaintiffs that the ramp request would be considered if they completed the application process and filed the necessary materials. With respect to the ATV request claim, the district court held that the plaintiffs failed to produce evidence showing that the ATV request was either "reasonable" or "necessary," within the meaning of the FHAA.[6] The court also held alternatively that the ATV request claim was premature.

After the district court entered final judgment, the defendants filed a motion seeking attorneys' fees and costs. The court denied the motion, holding that the lawsuit was not frivolous and that, therefore, an award of attorneys' fees and costs was not required under the FHAA. The court also declined to apply a provision in the covenants requiring that a homeowner pay the HOA's attorneys' fees and costs if the HOA substantially prevailed in litigation brought by the homeowner. The court concluded that such a provision was unenforceable in this action as being contrary to the public policy interest of encouraging private parties to pursue potential FHAA violations.

## II.

We first address the issues presented in the plaintiffs'

---

[5]The plaintiffs filed a cross-motion for partial summary judgment, which the district court denied, that is not at issue in this appeal.

[6]The district court also held that the evidence failed to show that Merritt acted with discriminatory intent in opposing the ATV request and the ramp request.

appeal. We review de novo the district court's award of summary judgment in favor of the defendants, viewing the facts, and all reasonable inferences that may be drawn from those facts, in the light most favorable to the plaintiffs. *See Bonds v. Leavitt*, 629 F.3d 369, 380 (4th Cir. 2011); *S.C. Green Party v. S.C. State Election Comm'n*, 612 F.3d 752, 755 (4th Cir. 2010). Summary judgment is appropriate only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 295 (4th Cir. 2010).

## A.

We begin by addressing the plaintiffs' ramp request claim. The plaintiffs initially assert that the district court erred in concluding that the ramp request claim was premature. They argue that this claim was ripe for judicial consideration because the defendants both actually and constructively denied the ramp request before the present complaint was filed in the district court. We disagree with the plaintiffs' argument.

The "ripeness" requirement originates in the "case or controversy" constraint of Article III, and presents a "threshold question[ ] of justiciability." *Lansdowne on the Potomac Homeowners Ass'n, Inc. v. OpenBand at Lansdowne, LLC*, __ F.3d ___, 2013 WL 1364274, at *4 (4th Cir. Apr. 5, 2013) (*Lansdowne*); *see also DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006) (explaining that "[i]f a dispute is not a proper case or controversy, the courts have no business deciding it, or expounding the law in the course of doing so"). The issue of ripeness entails an analysis considering the fitness of the issues before the court, as well as the hardship that the parties will experience if the court withholds consideration of the dispute. *Lansdowne*, 2013 WL 1364274, at *7 (citing *Miller v. Brown*, 462 F.3d 312, 319 (4th Cir. 2006)).

"The doctrine of ripeness prevents judicial consideration of issues until a controversy is presented in clean-cut and concrete form." *Miller*, 462 F.3d at 318–19 (citation and internal quotation marks omitted). As explained by the Supreme Court, the purpose of the ripeness doctrine is to require courts to avoid taking premature judicial action, thereby preventing them from becoming entangled in "abstract disagreements." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99, 105 (1977).

A case is fit for adjudication "when the action in controversy is final and not dependent on future uncertainties." *Miller*, 462 F.3d at 319; *Franks v. Ross*, 313 F.3d 184, 195 (4th Cir. 2002). Stated alternatively, "[a] claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (citation and internal quotation marks omitted); *see also Bryant Woods Inn, Inc. v. Howard Cnty., Md.*, 124 F.3d 597, 602 (4th Cir. 1997) (in determining whether a claim is ripe, we "decide whether the issue is substantively definitive enough to be fit for judicial decision and whether hardship will result from withholding court consideration").

An issue becomes ripe for adjudication under the FHAA when a disabled resident first is denied a reasonable and necessary modification or accommodation. *See Bryant Woods*, 124 F.3d at 602. As the parties bringing this FHAA action, the plaintiffs have the burden of establishing that their claims are ripe. *See Miller*, 462 F.3d at 319.

It is undisputed that the plaintiffs' first written application to construct the ramp was made on September 20, 2010. Under the covenants, the review board was required to respond to that application within 30 days. However, the plaintiffs did not wait the full 30-day period for a response,

but instead initiated the present court action on October 13, 2010.

Additionally, as developed in discovery in this case, the review board sent the plaintiffs a letter on October 18, 2010, stating that the application was "incomplete" and asking for further information about the proposed ramp. Although the plaintiffs do not dispute the board's finding that the application was incomplete, they declined to supplement the application as requested by the review board. In light of these facts, the defendants did not "deny" the ramp request, as would be necessary to present a controversy in "clean-cut and concrete form" appropriate for adjudication by a federal court. *Miller*, 462 F.3d at 318–19. Further, contrary to the plaintiffs' argument, the defendants' actions have not amounted to a constructive denial of the ramp request.

We also observe that the defendants stipulated during oral argument before this Court that the review board will approve the plaintiffs' ramp request upon their submission of the specifications requested by the board. The fact that the defendants will grant the ramp request upon the plaintiffs' proper submission of that request is material to our analysis of the hardship prong of the ripeness inquiry. *See Abbott Labs.*, 387 U.S. at 149 (discussing hardship prong of the ripeness analysis); *Lansdowne*, 2013 WL 1364274, at *7-8 (same). We further observe that the ramp request claim is not time-sensitive, and thus a holding that the claim is not ripe will not present an immediate threat to the plaintiffs. *See Lansdowne*, 2013 WL 1364274, at *8 (stating that the hardship prong is analyzed by considering the immediacy of any threat and the burden imposed on a plaintiff) (citation omitted). Moreover, our holding encourages, rather than forecloses, the plaintiffs' ability to submit the information requested by the review board, and thus withholding consideration of this claim does not impose a significant burden on the plaintiffs. Therefore, we conclude that the parties will not experience a significant hardship as a result of our withholding consideration of the ramp request

claim. Accordingly, we hold that the ramp request claim is not ripe for review, because final action on the request is still forthcoming and is "dependent on future uncertainties." *See Miller*, 462 F.3d at 319.

In reaching this conclusion, we agree with the district court's determination that the verbal inquiries made by the plaintiffs in 2003 and 2007 are barred from consideration in determining ripeness, because those requests were made outside the two-year statute of limitations. *See* 42 U.S.C. § 3613(a)(1)(A). Those oral requests also do not qualify for consideration pursuant to the "continuing violation" doctrine, under which acts occurring outside the statute of limitations may be considered when there is a "fixed and continuing practice" of unlawful acts both before and during the limitations period. *Nat'l Advertising Co. v. City of Raleigh*, 947 F.2d 1158, 1166-67 (4th Cir. 1991) (citation omitted); *see also Havens Realty Corp. v. Coleman*, 455 U.S. 363, 380-81 (1982) (applying "continuing violation" doctrine to Fair Housing Act claim).

Here, even if we assume that those two oral requests made during a seven-year period qualified as valid applications for the review board's consideration, we conclude that the board's failure to act on them did not constitute a "fixed and continuing practice." *See Nat'l Advertising Co.*, 947 F.2d at 1166-67; *cf. A Soc'y Without A Name v. Virginia*, 655 F.3d 342, 348 (4th Cir. 2011) (noting that for purposes of continuing violation doctrine, plaintiff must show that illegal act "did not occur just once, but rather in a series of separate acts") (citation and internal quotation marks omitted). Thus, we hold that the continuing violation doctrine is not applicable in this case. Accordingly, because the ramp request claim is not ripe for judicial review, we vacate the portion of the district court's judgment adjudicating the merits of that claim in favor of the defendants. *See Giovani Carandola, Ltd. v. Fox*, 470 F.3d 1074, 1085 n.5 (4th Cir. 2006) (holding that portion of

plaintiff's complaint was not ripe, and vacating that aspect of the district court's decision).

B.

We next address the issue whether the district court erred in awarding summary judgment to the defendants on the ATV request claim. Initially, we observe that, contrary to the district court's conclusion, the ATV request claim was not premature. A denial of a request need not be explicit, but rather may be treated as a "constructive" denial based on the decision maker's conduct. *See Groome Res. Ltd. v. Parish of Jefferson*, 234 F.3d 192, 199 (5th Cir. 2000) (noting that a denial under the FHAA may be "actual or constructive, as an indeterminate delay has the same effect as an outright denial").

It is undisputed that the plaintiffs made the ATV request in writing in May 2009, and there is no suggestion that the manner in which they made their request violated the HOA's procedures. The board of directors twice "tabled" the ATV request pending a decision to seek additional information from the plaintiffs, but the board did not ask the plaintiffs to provide such information until more than 15 months later. Under these circumstances, the HOA's failure to take any action for such an extended period operated as a constructive denial of the ATV request.[7] *See Groome Res.*, 234 F.3d at 199 (concluding that defendant's failure to act for over three months on an application for an accommodation constituted a constructive denial of the accommodation request, and that the issue therefore was ripe for review). Accordingly, we turn to address the issue whether the HOA's constructive denial of the ATV request violated the FHAA.

---

[7]Although not dispositive, we note that the defendants conceded during oral argument before this Court that they would have denied the plaintiffs' ATV request, even had the HOA received the additional information sought.

The FHAA forbids discrimination against any person because of a handicap or disability in the provision of services in connection with a dwelling.[8] *See* 42 U.S.C. §§ 3601–3631; *Bryant Woods*, 124 F.3d at 602-03 (discussing the FHAA). The FHAA defines "discrimination" in relevant part as "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B); *Bryant Woods*, 124 F.3d at 603.

A party raising an accommodation claim under the FHAA bears the burden of establishing that the proposed accommodation is "(1) reasonable and (2) necessary (3) to afford handicapped persons equal opportunity to use and enjoy housing." *Bryant Woods*, 124 F.3d at 603-04 (citing 42 U.S.C. § 3604(f)(3)). For purposes of the ATV claim, we focus our analysis on the "reasonableness" prong of this standard. In determining whether a proposed accommodation is reasonable under the FHAA, we undertake a fact-specific inquiry, considering, among other things, "the extent to which the accommodation would undermine the legitimate purposes and effects of [the] existing [ ] regulations and the benefits that the accommodation would provide" to the plaintiff. *Id.* at 604.

In enacting the FHAA, Congress made clear that the health and safety of other persons are relevant factors in determining whether a person or entity violated the FHAA. *See* 42 U.S.C. § 3604(f)(9) ("Nothing in this subsection requires that a dwelling be made available to an individual whose tenancy would constitute a direct *threat to the health or safety of other individuals*.") (emphasis added).[9] We join other courts that

---

[8]There is no dispute that Jacob is a person with a "handicap" or "disability," within the meaning of the FHAA.

[9]Although the language of § 3604(f)(9) mentions a "dwelling [to] be made available," the concern about a threat to the safety of others is also relevant to a reasonable accommodation claim. *See Dadian v. Village of Wilmette*, 269 F.3d 831, 840 n.6 (7th Cir. 2001) (citing *School Bd. of Nassau Cnty., Fla. v. Arline*, 480 U.S. 273, 288 n.16 (1987)).

have recognized this principle, and hold that the potential for personal injury is a relevant consideration in examining whether a modification or accommodation request was reasonable. *See Dadian v. Village of Wilmette*, 269 F.3d 831, 840-41 (7th Cir. 2001) (analyzing 42 U.S.C. § 3604(f)(9) and observing that a defendant may, in certain circumstances, deny a plaintiff's accommodation request if that request poses a direct threat to safety of others)[10]; *Howard v. City of Beavercreek*, 108 F. Supp. 2d 866, 875 (S.D. Ohio 2000) (holding that defendant was not required by the FHAA to grant plaintiff permission to construct a six foot fence to alleviate the effects of post traumatic stress disorder, because the fence posed a threat to pedestrian and vehicular traffic), *aff'd on other grounds*, 276 F.3d 802 (6th Cir. 2002); *Bangerter v. Orem City Corp.*, 46 F.3d 1491, 1503-04 (10th Cir. 1995) (observing that the FHAA permits "reasonable restrictions on the terms or conditions of housing [to disabled individuals] when justified by public safety concerns," so long as those concerns are not based on "blanket stereotypes" about persons with disabilities).

Without question, the plaintiffs established that use of an ATV would make it easier for Jacob to travel on the unpaved roads of Lee's Crossing, and that it would be impractical for him to use his power wheelchair for this purpose because of the potential damage to the wheelchair's electronic components. Accordingly, the plaintiffs established that the use of an ATV would afford Jacob the benefit of easier transportation within the community.

Nevertheless, the present record shows that such benefit to

---

[10]In *Dadian*, the court observed that it was the defendant's burden to show that the requested accommodation posed substantial safety concerns. 269 F.3d at 840. We need not determine in this case which party holds the burden of proof because, as we explain later, the defendants produced substantial evidence establishing that the ATV request posed significant safety concerns, and the plaintiffs failed to rebut this evidence.

Jacob is outweighed substantially by the potential danger that use of the ATV could cause to the residents of the community. The defendants produced overwhelming evidence showing that the use of an ATV as a general matter within Lee's Crossing, and Jacob's use of such a vehicle in particular, present a significant threat to Jacob's own safety as well as to the safety of the other residents of the community.

Among other items, the defendants included in the record a copy of the owner's manual (the manual) for the ATV model that Jacob sought to operate. The manual emphasizes that the use of the ATV is "FOR OFF-ROAD USE ONLY," and that the ATV does not conform to federal motor vehicle safety standards. The manual contains the additional warning that "the ATV does not have turn signals and other features required for use on public roads." Separately, the manual again states that "[y]ou should never ride your ATV on public streets, roads or highways, *even if they are not paved*. Drivers of street vehicles may have difficulty seeing and avoiding you, which could lead to a collision." (Emphasis added.)

The evidence further showed that drivers traveling the roads of Lee's Crossing are permitted to operate their vehicles at speeds up to 35 miles per hour, in excess of the speed limits in effect on many public roads. Thus, it is of particular note that the Code of Virginia prohibits, as a general matter, the operation of any all-terrain vehicle "[o]n any public highway, or other public property." Va. Code § 46.2-915.1.

We also observe that the defendants' expert witness, Gary E. Kilpatrick, a certified professional engineer with experience in the operation of ATVs, submitted a report describing the dangers inherent in operating an ATV in an area such as Lee's Crossing. In his report, Kilpatrick stated that "ATVs are designed specifically for operation on off-road dirt terrain," and that the tires of an ATV "do not handle well on hard packed dirt roads, graveled roads and hard surfaced paved roads." Kilpatrick further opined that ATVs are difficult for

drivers of other vehicles to see and are not equipped with headlights, brake lights, or other devices to make them visible to other drivers on the road.

In addition to this evidence concerning the general dangers of operating an ATV within Lee's Crossing, the defendants produced evidence showing the increased danger posed in ATV use by persons who have physical impairments. In his report, Kilpatrick stated that riding an ATV is physically demanding, and that, to operate an ATV safely, a rider must "have full use of his entire body, especially his hands, arms, torso and legs." Kilpatrick, who examined Jacob's medical reports, opined that the physical limitations caused by Jacob's partial paralysis render his use of an ATV very dangerous, and that the medication he takes to control spasms in his lower extremities poses additional dangers. Accordingly, Kilpatrick concluded that "because of the hazards associated with riding ATVs, the surrounding terrain and his physical limitations, [Jacob] is and will be a danger to himself, other drivers, [and] pedestrians" if he were allowed to operate an ATV within Lee's Crossing.

The plaintiffs have not refuted the defendants' evidence that any operation of an ATV for other than off-road uses is inherently dangerous.[11] Instead, the plaintiffs challenge Kilpatrick's conclusion that Jacob's physical limitations make his use of an ATV exceptionally dangerous. The plaintiffs

---

[11]The plaintiffs, however, cite the provision in the covenants that allow a homeowner to petition the HOA for permission to use an off-road vehicle such as an ATV within Lee's Crossing. But the mere mention in the covenants of that possibility, without evidence that such petitions are sometimes or routinely granted, does not cast doubt on the safety concerns underlying the general prohibition of such vehicles on the community's common roads. And, although the plaintiffs further assert that certain maintenance workers employed by the HOA "use four-wheeled vehicles similar to ATVs," the only evidence on this point cited by the plaintiffs relates to a six-wheeled farm vehicle that, according to the testimony, is not similar to an ATV.

rely primarily on Jacob's own testimony, in which he stated that he could operate an ATV safely, and on a video recording of Jacob operating an ATV on the plaintiffs' property without incident.[12] Having considered this evidence alongside the defendants' evidence, we conclude that the plaintiffs have not presented facts sufficient to create an issue for trial whether Jacob could operate an ATV within Lee's Crossing without creating a danger to the residents of the community. *Cf. Williams v. Giant Food Inc.*, 370 F.3d 423, 433 (4th Cir. 2004) (plaintiff's subjective belief about her abilities, absent sufficient objective corroboration, cannot defeat summary judgment).

In light of this conclusion, we need not reach the other elements of the ATV request claim, including whether the request would be "necessary" to afford Jacob an equal opportunity to enjoy the Lee's Crossing community.[13] Accordingly, we affirm the district court's award of summary judgment in the defendants' favor on the ATV request claim, because the plaintiffs failed to establish that the proposed accommodation is "reasonable," within the meaning of the FHAA. *See Bryant Woods*, 124 F.3d at 604 (directing courts to consider the benefits of the proposed accommodation against the extent to which the legitimate purposes and effects of the regulation would be undermined by the accommodation).

## III.

We next consider the defendants' contention on cross-appeal that the district court erred in declining to award them

---

[12]The self-selective nature of the video submitted by the plaintiffs, along with its controlled environment, does not sufficiently constitute "objective corroboration" in this case. *Cf. Williams v. Giant Food Inc.*, 370 F.3d 423, 433 (4th Cir. 2004) (citation omitted).

[13]In light of our conclusion that the denial of the ATV request did not constitute a violation of the FHAA, we need not consider whether Merritt could be found individually liable for the HOA's action in denying that request.

attorneys' fees and certain additional costs incurred in defending this matter.[14] The defendants filed a motion seeking an award of attorneys' fees and costs, relying on the attorneys' fees and costs provision of the FHAA, 42 U.S.C. § 3613(c)(2), as well as on the language in the covenants providing for the payment of attorneys' fees when the HOA is a prevailing party.

With respect to their motion, the defendants requested an evidentiary hearing at which they could present evidence concerning the "reasonableness of [their] invoices, costs and expenses." The record does not show the nature or the amount of such costs at issue in the motion for attorneys' fees and costs, nor do the defendants argue on appeal the nature or amount of those additional costs sought.

We also observe that the defendants do not assert a separate basis for entitlement to an award of these unspecified costs independent from their asserted right to an award of reasonable attorneys' fees. The district court considered the defendants' motion without distinguishing the attorneys' fees request from the present request for costs, and the defendants do not argue on appeal that the district court erred in considering those requests in tandem.

In analyzing the merits of the defendants' contention that they are entitled to attorneys' fees and costs, we observe that

---

[14]Separately, in the district court, the defendants filed a bill of costs pursuant to 28 U.S.C. § 1920 and the Eastern District of Virginia's Taxation of Costs Guidelines (the guidelines). The defendants sought in the bill of costs reimbursement of $8,413.81 for fees paid to court reporters, certain printing costs, private process server fees and delivery costs, and allowances for the appearance of certain witnesses and their travel expenses. The district court granted the bill of costs in the amount of $7,508.81, declining to award the defendants any money for private process server fees and delivery costs. The parties do not argue that the district court erred in awarding the defendants $7,508.81 and, accordingly, the court's decision relating to the bill of costs is not at issue in this appeal.

the defendants base the first part of their argument on the FHAA provision granting district courts the discretion to award attorneys' fees and costs to a "prevailing party." *See* 42 U.S.C. § 3613(c)(2) (providing that "the court, in its discretion, may allow the prevailing party . . . reasonable attorney's fee[s] and costs"); *Bryant Woods*, 124 F.3d at 606. However, the Supreme Court has held that when an action involves a civil rights matter, and the prevailing party is a defendant, attorneys' fees may be awarded by a district court only "upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978) (construing § 706(k) of Title VII of the Civil Rights Act of 1964).

This Court held in *Bryant Woods* that the above standard in *Christiansburg* also applies to attorneys' fees requests for claims brought under the FHAA. 124 F.3d at 606. We hold that this standard is equally applicable to a request for an award of costs pursuant to the FHAA. *See Taylor v. Harbour Pointe Homeowners Ass'n*, 690 F.3d 44, 50-51 (2d Cir. 2012) (analyzing prevailing defendants' requests for attorneys' fees and costs together under the *Christiansburg* standard in Fair Housing Act action).

Citing *Christiansburg*, the district court concluded that the plaintiffs' complaint was not "frivolous, unreasonable, or without foundation," 434 U.S. at 421, and, accordingly, declined to award attorneys' fees to the defendants. After reviewing the record and the parties' arguments, we conclude that the district court did not abuse its discretion in reaching this conclusion and in denying the defendants' request on this basis.

The defendants argue separately, however, that they are entitled to attorneys' fees and costs based on a provision in the covenants stating that, "[s]hould the Association, Board, Architectural Review Board or the Declarant substantially

prevail in any litigation brought by or against an Owner, the Owner shall be required to pay all attorney's fees and costs of the litigation, including expert witness fees, incurred by any such entity." The defendants contend that the district court was required under this provision to award them attorneys' fees and costs, irrespective of the standard set forth in *Christiansburg* and *Bryant Woods*. We disagree with the defendants' argument.

Congress' decision to encourage private civil actions under statutes such as the FHAA and the Civil Rights Act reflects a legislative choice to allow aggrieved citizens to advance the public interest. As the Supreme Court explained in *Christiansburg* with respect to the Civil Rights Act, "the plaintiff [in such cases] is the chosen instrument of Congress to vindicate a policy that Congress considered of the highest priority." 434 U.S. at 418 (citation and internal quotation marks omitted). Further, as we observed in *Bryant Woods*, the FHAA's prohibitions "draw on the same policies attending Title VII of the Civil Rights Act." 124 F.3d at 606 (observing similarities between the Civil Rights Act and the FHAA). We therefore conclude that, like the Civil Rights Act plaintiff discussed in *Christiansburg*, a plaintiff filing a lawsuit under the FHAA acts to effectuate the intent of Congress to vindicate the policies underlying that Act.

In light of the public policy objectives inherent in encouraging private plaintiffs to seek redress of FHAA violations, it would be incongruous to allow bodies such as the HOA to enforce by contract an attorneys' fees provision against a plaintiff who has brought an FHAA action in good faith. Such a provision, if enforced by the courts, would have the natural and counterproductive effect of dissuading individuals from filing an FHAA lawsuit when they have a reasonable basis on which to assert their claims. Based on these considerations, we conclude that the district court did not err in refusing to award attorneys' fees and costs to the defendants based on the

fee provision in the covenants. Accordingly, we affirm the district court's judgment in the defendants' cross-appeal.

## IV.

For these reasons, we vacate the district court's summary judgment holding on the ramp request claim, because that claim is not ripe for judicial review, and we remand the claim to the district court with instructions to dismiss this portion of the complaint without prejudice. We affirm the district court's award of summary judgment in favor of the defendants on the ATV request claim, and, with respect to the cross-appeal, we affirm the district court's judgment denying the defendants' request for attorneys' fees and costs.

*AFFIRMED IN PART,*
*VACATED IN PART AND REMANDED*