**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

─────────────

**No. 21-1217**

─────────────

PAMELA D. WHITAKER,

        Plaintiff - Appellee,

    v.

MONROE STAFFING SERVICES, LLC; STAFFING 360 SOLUTIONS, INC.,

        Defendants - Appellants.

─────────────

Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro.  N. Carlton Tilley, Jr., Senior District Judge.  (1:20−cv−00012−NCT−JLW)

─────────────

Argued:  March 9, 2022                         Decided:  July 22, 2022

─────────────

Before RICHARDSON and HEYTENS, Circuit Judges, and KEENAN, Senior Circuit Judge.

─────────────

Vacated and remanded with instructions by published opinion.  Senior Judge Keenan wrote the majority opinion, in which Judge Heytens joined.  Judge Richardson wrote an opinion concurring in part and concurring in the judgment.

─────────────

**ARGUED:**  Jonathan D. Pressment, HAYNES & BOONE, LLP, New York, New York, for Appellants.  Grover Gray Wilson, NELSON MULLINS RILEY & SCARBOROUGH LLP, Winston-Salem, North Carolina, for Appellee.  **ON BRIEF:**  Craig D. Schauer, BROOKS, PIERCE, MCLENDON, HUMPHREY & LEONARD, L.L.P., Greensboro, North Carolina; Abbey Gauger, HAYNES & BOONE, LLP, New York, New York, for Appellants.  Stuart H. Russell, NELSON MULLINS RILEY & SCARBOROUGH LLP,

Winston-Salem, North Carolina, for Appellee.

BARBARA MILANO KEENAN, Senior Circuit Judge:

This appeal raises issues concerning ripeness and the application of a contract's forum selection clause. In August 2018, plaintiff Pamela Whitaker entered into a share purchase agreement with the defendants for the sale of her business, which agreement the parties later amended (the contract, or the amended agreement). Whitaker filed suit in December 2019 in North Carolina state court, alleging that the defendants had not made interest and earnout payments as required under the amended agreement. The defendants removed the case to federal district court in the Middle District of North Carolina, where they argued that the state or federal courts in New York were the exclusive forums for Whitaker's complaint under the contract's forum selection clause. The defendants also argued that Whitaker's claims were not yet ripe because, at the time the complaint was filed, all payments that were due under the contract had been made.

The magistrate judge recommended transferring the case to the Southern District of New York in accordance with the contract's forum selection clause. The district court disagreed. The district court concluded that Whitaker's claims were "relating to" a setoff, enabling Whitaker to invoke an exception in the forum selection clause and maintain her suit in North Carolina state court. The district court remanded the case to the North Carolina state court, and the defendants now appeal.

Upon our review, we initially conclude that Whitaker's claims are ripe, both as originally pleaded and under the facts developed prior to the district court's judgment. We also agree with the magistrate judge that Whitaker's claims do not relate to a setoff and that under the contract's forum selection clause, the state or federal courts in New York are

3

the exclusive forums for Whitaker's claims.  We therefore vacate and remand with instructions that the district court transfer this case to the Southern District of New York.

I.

Whitaker is the owner of Key Resources, Inc., a North Carolina corporation.  In August 2018, Whitaker entered into a share purchase agreement with defendant Monroe Staffing Services, LLC.[1]  Monroe agreed to make an initial payment of around $8 million to Whitaker, to be followed by two earnout payments in August 2019 and August 2020, each in the amount of $2,027,198.

The agreement specified that New York law would apply to all matters relating to the contract.  The contract also included a forum selection clause, stating that:

> Any legal suit, action, proceeding, or dispute arising out of or related to this Agreement . . . *may be instituted in the federal courts of the United States of America or the courts of the State of New York* in each case located in the city and county of New York, and *each party irrevocably submits to the exclusive jurisdiction* of such courts in any such suit, action, proceeding, or dispute [the forum selection clause].

The forum selection clause further provided the following exception (the North Carolina exception):

> *Notwithstanding the foregoing, any legal suit, action, proceeding, or dispute <u>arising out of or relating to</u> a [Monroe] setoff pursuant to Section 7.08 and [Whitaker's] dispute relating thereto may be instituted in the federal courts of the United States of America located in the Middle District of North Carolina or the courts of the State of North Carolina* located in Guilford

---

[1] Defendant Staffing 360 Solutions, Inc. is the parent company of Monroe.  For ease of reference, we refer to Staffing 360 and Monroe collectively as "Monroe" or "the defendants."

4

> County, in either case applying New York law, and such forum selection by [Whitaker] shall be controlling.

(Emphases added.) Thus, under these provisions, New York federal or state courts are the exclusive forums for disputes arising out of or relating to the contract, unless the dispute is "arising out of or relating to a [Monroe] setoff pursuant to Section 7.08" of the contract.

Section 7.08 (or the setoff provision) allows Monroe "at its sole election" to withhold or deduct amounts from the earnout payments that otherwise would be owed to Whitaker in the event of Whitaker's breach of the contract or misrepresentation of information contained in the contract. To exercise this right of setoff, Monroe "shall" "deliver[] a written notice to [Whitaker] that shall contain the following: (1) the basis for why [Monroe] believes it is entitled to setoff, (2) the alleged amount owed (the 'Setoff Amount') along with a calculation showing the basis for such Setoff Amount, and (3) reasonable documentation supporting the Setoff Amount."

Monroe failed to make the first scheduled earnout payment due in August 2019. The following month, the parties executed an amendment to the share purchase agreement. The amended agreement stated that both outstanding earnout payments were "deemed earned and payable in full." The amendment also permitted Monroe to delay the first earnout payment "provided, however, that for each full calendar month that such payment is delayed, [Monroe] shall pay [Whitaker] interest in the amount of $10,000." The first such interest payment was due at the end of September 2019, with successive interest payments due by "the last business day of each calendar month." The amendment further provided that:

> [Monroe] expects that it will pay the First Year Earnout on or around November 29, 2019, but failure to make payment *shall not be a breach* of the Share Purchase Agreement *so long as [Monroe] continues to pay interest* . . . and such payment is made in full by February 27, 2020.

(Emphasis added.) The amendment also stated that the final earnout payment would be "due and payable on February 27, 2020." The parties dispute whether the interest payments specified in the amendment were made as required by the amended agreement.

On November 25, 2019, Monroe's counsel sent Whitaker a letter stating as the subject, "Notice of Claim And Reservation Of Rights With Respect To Breaches" of the contract (the reservation of rights letter). In the letter, counsel stated that it was investigating "numerous" misrepresentations that Whitaker allegedly had made in connection with the sale of her business. The letter further explained that "in an abundance of caution," Monroe was providing Whitaker with notice of its claims with respect to "suspected breaches" of the contract and "other potentially fraudulent representations and/or conduct." The letter listed several sections of the contract that might be the subject of Monroe's claims. The letter also stated:

> We further provide you with notice, pursuant to [the setoff provision], that [Monroe] reserves all rights to setoff any penalties, liabilities, or damages arising as a result of any fraudulent conduct and/or breaches of the [contract] by you . . . against any Earnout Payments that would otherwise be owed to you. (*See* [contract], § 7.08.)

However, the letter did not include a setoff amount, supporting calculations, or corroborating documentation, as required by the setoff provision of Section 7.08.

Ten days later, on December 5, 2019, Whitaker filed the present complaint against the defendants in North Carolina state court, alleging breach of contract and seeking a

6

declaratory judgment to that effect. Whitaker alleged that the defendants "materially breached the [contract] by failing to make the payments and interest as agreed," in the amount of $4,054,396 plus interest. The defendants removed the case to federal district court in the Middle District of North Carolina and filed a motion to dismiss the complaint for lack of ripeness, lack of personal jurisdiction, improper venue, and failure to state a claim, under Federal Rules of Civil Procedure 12(b)(1), (2), (3), and (6). Alternatively, Monroe sought to transfer the case to the Southern District of New York pursuant to the forum selection clause and 28 U.S.C. § 1404(a).

In response, Whitaker filed a motion to amend her complaint. The proposed amended complaint alleged that as of February 28, 2020, the defendants had "repeatedly failed to timely make the interest payments as required," had failed to make the earnout payments, and had purported to terminate the contract. Whitaker also sought to have the case remanded to state court.

While the case was pending in the district court, Monroe filed a complaint against Whitaker in the Southern District of New York, alleging claims of breach of contract and fraudulent inducement.[2] Monroe's complaint did not allege entitlement to a setoff. The New York litigation currently is stayed pending resolution of this appeal.

The magistrate judge in North Carolina concluded that the contract's forum selection clause mandated exclusive jurisdiction in the state or federal courts in New York

---

[2] Monroe has since filed an amended complaint in the New York proceedings, alleging a single claim that Whitaker breached the warranties and representations in the contract.

7

and recommended transferring the case accordingly. The district court disagreed, holding that the clause's North Carolina exception for disputes "relating to" a setoff applied. The district court remanded the case to North Carolina state court without addressing Monroe's other arguments, and denied as moot Whitaker's motion to amend her complaint. Monroe appeals.

II.

Monroe first argues that the district court should have dismissed Whitaker's complaint because her claims were not ripe when the complaint was filed. According to Monroe, because the earnout payments were not due until February 2020 under the terms of the amended agreement, Whitaker's complaint was premature when filed in December 2019. Monroe asserts that at the time the complaint was filed, Monroe "had made every single payment to which [Whitaker] was even arguably entitled." We disagree with Monroe's ripeness argument.

Although we conclude that the district court erred in declining to address Monroe's ripeness challenge before proceeding to interpret the forum selection clause, we ultimately disagree with Monroe's contention that the district court was required to dismiss the complaint on ripeness grounds. The doctrine of ripeness arises from the case or controversy requirement of Article III. *Scoggins v. Lee's Crossing Homeowners Ass'n*, 718 F.3d 262, 269 (4th Cir. 2013); *South Carolina v. United States*, 912 F.3d 720, 730 (4th Cir. 2019). A case is not ripe for judicial determination "if the plaintiff has not yet suffered injury and any future impact remains wholly speculative." *Doe v. Va. Dep't of State Police*,

8

713 F.3d 745, 758 (4th Cir. 2013) (citation and internal quotation marks omitted).  In contrast, a case is ripe for judicial decision when the "controversy is final and not dependent on future uncertainties." *Id.* (citation omitted).  Thus, when a claim is "presented in a clean-cut and concrete form," the issue is ripe for adjudication.  *South Carolina*, 912 F.3d at 730 (citation omitted).  The plaintiff bears the burden of establishing ripeness.  *Doe*, 713 F.3d at 758.

Because ripeness is a Constitutional limitation on federal court jurisdiction, ripeness presents the threshold question whether a claim is justiciable.  *Scoggins*, 718 F.3d at 269; *South Carolina*, 912 F.3d at 730.  Both the district court and this Court are required to assure that such jurisdictional requirements are met.  *Va. Dep't of Corrs. v. Jordan*, 921 F.3d 180, 187 (4th Cir. 2019).

Generally, a court must resolve jurisdictional issues before considering the merits of a claim, because "[w]ithout jurisdiction the court cannot proceed at all in any cause." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998) (citation omitted); *see also Ctr. for Biological Diversity v. U.S. Dep't of the Interior*, 563 F.3d 466, 475 (D.C. Cir. 2009) (courts must address ripeness before considering the merits).  The Supreme Court has recognized exceptions to this general rule for certain threshold issues.[3]  *See Ruhrgas*

---

[3]  This Court also has held that res judicata can qualify as a threshold issue.  *East Cost Repair & Fabrication, LLC v. United States ex rel. Dep't of the Navy*, 16 F.4th 87, 90 (4th Cir. 2021).  In that case, we declined to consider jurisdictional issues surrounding the "Election Doctrine" rule and instead held that the parties' settlement agreement barred the plaintiff's claim of payment.  *Id.* at 91.  Neither the "Election Doctrine" rule nor the doctrine of res judicata is before us in the present case and, thus, our decision in *East Coast* is inapplicable here.  *See* Concurring Op. 22-23.

*AG v. Marathon Oil Co.*, 526 U.S. 574, 585 (1999) (listing examples of threshold issues that can be resolved before subject matter jurisdiction, including declining to exercise jurisdiction over state-law claims and abstaining under *Younger v. Harris*, 401 U.S. 37 (1971)).

An instructive case addressing one such threshold issue is the Supreme Court's decision in *Sinochem International Co. v. Malaysia International Shipping Corp.*, 549 U.S. 422 (2007), in which the Court held that district courts need not conclusively establish their jurisdiction before dismissing a case on *forum non conveniens* grounds. *Id.* at 425. *Forum non conveniens* is the common law doctrine enabling a court to dismiss a case when a foreign forum is the more appropriate venue based on a range of convenience-related factors. *Id.* at 429-30. The Court in *Sinochem* reasoned that "jurisdiction is vital only if the court proposes to issue a judgment on the merits," which occurs when a court assumes "substantive law-declaring power." *Id.* at 431, 433 (citations, internal quotation marks, and alteration omitted). Because a ruling on *forum non conveniens* grounds "is a determination that the merits should be adjudicated elsewhere," the Court concluded that the doctrine is a non-merits basis for dismissal. *Id.* at 432. Noting that jurisdictional questions can be "burdensome," the Court concluded that judicial economy sometimes may justify a court's decision to dismiss based on *forum non conveniens* before assuring itself of jurisdiction. *Id.* at 435-36.

Notably, however, the Court in *Sinochem* was not faced with the issue presented here, namely, whether a disputed forum selection clause in a contract requires transfer of the case to a different federal forum. To answer this question, we must interpret the

10

language of the parties' contract to determine the nature of their agreement. Like other contractual provisions, a forum selection clause is a bargained-for term of the contract which, as evidenced by this appeal, may have material value to one or more of the parties. *See Atl. Marine Constr. Co. v. U.S. Dist. Ct.*, 571 U.S. 49, 66 (2013) (a forum selection clause "may have figured centrally in the parties' negotiations and may have affected how they set monetary and other contractual terms" or have influenced their decision to "do business together in the first place").

In the present case, therefore, application of the forum selection clause is inextricably intertwined with the merits of the contract action. The parties' chosen forum depends on whether the dispute is "arising out of or relating to a [Monroe] setoff pursuant to Section 7.08." We cannot interpret the forum selection clause in isolation, but also must determine whether a setoff right was asserted in accordance with another provision of the contract. Under these circumstances, our interpretation of the forum selection clause requires us to assume "substantive law-declaring power" with respect to the merits of the case. *Sinochem*, 549 U.S. at 433 (citation and internal quotation marks omitted). Thus, while there may be instances in which application of a forum selection clause would merely "den[y] audience to a case on the merits," akin to a *forum non conveniens* dismissal, *id.* at 432 (citation omitted), the forum selection clause before us requires engagement in the merits of the case. We therefore conclude that the general rule of *Steel Co.* applies, and

11

that the district court should have assured itself of jurisdiction before interpreting and applying the forum selection clause.[4]  523 U.S. at 93-94.

We nevertheless decline to remand for the district court to consider Monroe's ripeness challenge in the first instance, because we conclude that Whitaker's claims were ripe at the time the district court issued its judgment.  In her complaint, filed in December 2019, Whitaker alleged that the defendants materially breached the contract "by failing to make the payments and interest as agreed."  Under the terms of the amended agreement, Monroe's failure to make the first earnout payment, originally due in August 2019, constituted a breach *unless* Monroe made the monthly interest payments beginning on September 30, 2019.  By alleging in her complaint that Monroe had failed to pay "interest," Whitaker claimed that a breach already had occurred.

Monroe disputes these allegations.  While acknowledging that its interest payments may have been untimely, Monroe asserts without documentary evidence that it paid the required interest.  However, this factual dispute centers on the *merits* of Whitaker's breach of contract claim, namely, whether a breach occurred due to Monroe's alleged failure to pay interest as agreed.[5]  This merits argument does not implicate the court's jurisdiction to

---

[4] To the extent that the Seventh Circuit reached a different conclusion in the context of mandamus relief in *In re: Limitnone, LLC*, 551 F.3d 572, 576-78 (7th Cir. 2008) (per curiam), we respectfully disagree.  We note, however, that the Seventh Circuit left open the possibility that, in some circumstances, district courts may not appropriately decide questions of venue before subject matter jurisdiction.  *Id.* at 578.

[5] The record contains an affidavit filed by Whitaker on February 4, 2020, in which she attested that she received the December 2019 interest payment late and had not yet received the interest payment due on January 31, 2020.  The affidavit does not reference (Continued)

entertain the breach of contract claim as pleaded. *See Litecubes, LLC v. N. Light Prods., Inc.*, 523 F.3d 1353, 1361 (Fed. Cir. 2008) ("[A] failure to prove the allegations alleged in a complaint requires a decision on the merits, not a dismissal for lack of subject matter jurisdiction.").

Moreover, because "ripeness is peculiarly a question of timing," we may look to factual developments that occurred after the complaint was filed to determine whether Whitaker's claims were ripe for review at the time of the district court's judgment. *Blanchette v. Conn. Gen. Ins. Corps.*, 419 U.S. 102, 140 (1974); *Am. Motorists Ins. Co. v. United Furnace Co.*, 876 F.2d 293, 302 n.4 (2d Cir. 1989); *see also Church of Our Lord & Savior Jesus Christ v. City of Markham*, 913 F.3d 670, 677 (7th Cir. 2019) (explaining that courts should determine ripeness based on the facts at the time of the court's decision, not at the time the complaint was filed). There is no dispute that Whitaker's claims were ripe by the time that the district court issued its decision in February 2021. Regardless whether interest payments were made before the complaint was filed, Monroe failed to pay the earnout amounts by the final February 2020 due date. This failure to make the earnout payments rendered Whitaker's claim for breach of contact ripe at least one year before the district court's judgment issued. By then, Whitaker allegedly had suffered at least one injury, namely, non-payment of the earnout amounts. Her injury was not "wholly

---

the interest payments due in September, October, and November 2019, which Whitaker generally alleged in her complaint had not been made. At oral argument, Monroe appeared to concede that these fall 2019 interest payments were rendered in an untimely fashion. As noted above, the record contains no corroboration of Monroe's contention that the interest payments were made at all, nor documentation showing the date that any payment was received.

speculative" or "dependent on future uncertainties." *Doe*, 713 F.3d at 758 (citations omitted). Under these circumstances, there was no risk that the court would become "entangled in abstract disagreements." *Scoggins*, 718 F.3d at 270 (citation and internal quotation marks omitted). We therefore conclude that Whitaker's claims were ripe for adjudication in the district court.

## III.

We turn to consider Monroe's contention that the district court erred in failing to transfer the case to the Southern District of New York. Monroe argues that the forum selection clause in the parties' contract established exclusive jurisdiction over Whitaker's claims in the federal or state courts in New York. According to Monroe, the clause's North Carolina exception for disputes "arising out of or relating to" a setoff does not apply here, because Monroe never sought to exercise its right to a setoff pursuant to Section 7.08.

In response, Whitaker urges us to affirm the district court's order remanding the case to North Carolina state court. In Whitaker's view, the North Carolina exception has broad application to any dispute "relating to" a setoff, even if such a setoff never was asserted by the defendants. Whitaker contends that the reservation of rights letter, various telephone conversations between the parties, and the lawsuit Monroe eventually filed in the Southern District of New York all show that her complaint is "relating to" a setoff. We disagree with Whitaker's arguments.

We review the district court's interpretation of the contract de novo. *Foodbuy, LLC v. Gregory Packaging, Inc.*, 987 F.3d 102, 118 (4th Cir. 2021). We also review de novo

14

the court's decision to remand the case to state court.[6] *Quicken Loans Inc. v. Alig*, 737 F.3d 960, 964 (4th Cir. 2013).

A forum selection clause in a contract "represents the parties' agreement as to the most proper forum." *Atl. Marine Constr. Co.*, 571 U.S. at 63 (citation omitted). The "enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system." *Id.* (citation omitted). Accordingly, courts will enforce such clauses "in all but the most exceptional cases." *Id.* (citation omitted). When a forum selection clause designates another federal forum, we will transfer the case to that forum pursuant to 28 U.S.C. § 1404(a) ("For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.").[7] *Id.* at 59.

---

[6] Following the Supreme Court's decision in *Atlantic Marine Construction Co.*, 571 U.S. 49, we have left open the question whether the more deferential abuse of discretion standard of review should apply to questions of venue when a contract contains a forum selection clause. *See BAE Sys. Tech. Sol. & Servs., Inc. v. Republic of Korea's Def. Acquisition Program Admin.*, 884 F.3d 463, 470 & n.4 (4th Cir. 2018). However, we need not resolve this issue here because under either standard of review, we would vacate the district court's judgment based on the court's erroneous interpretation of the contract. *See id.* at 470.

[7] As an initial matter, we disagree with Whitaker's assertion that the forum selection clause merely allows, but does not mandate, jurisdiction in New York for non-setoff-related claims. In support of this argument, Whitaker points to the permissive phrase "*may* be instituted." *See BAE Sys. Tech. Sol. & Servs.*, 884 F.3d at 470-72 (discussing difference between permissive and mandatory forum selection clauses). The clause later states that the parties "irrevocably submit[] to the *exclusive jurisdiction*" of New York state and federal courts. This "specific language of exclusion" confers mandatory jurisdiction in New York to the exclusion of any other forum for claims not subject to the limited North (Continued)

When interpreting a contract under New York law, we "give effect to the *expressed* intentions of the parties." *Law Debenture Tr. Co. of N.Y. v. Maverick Tube Corp.*, 595 F.3d 458, 467 (2d Cir. 2010) (citation omitted). We give terms their plain meaning and read the contract as a whole to avoid placing "undue emphasis" on "particular words and phrases." *Id.* at 468. We thus will not "add or excise terms" or adopt an interpretation of the contract that would render any provision superfluous. *Id.* at 468.

As discussed above, the forum selection clause in the present case establishes that the state or federal courts in New York are the default forums for all disputes arising out of or relating to the contract, subject to a limited exception for setoff-related disputes. The clause's North Carolina exception applies to "any legal suit, action, proceeding, or dispute arising out of or relating to a [Monroe] setoff pursuant to Section 7.08" of the contract. The North Carolina exception undoubtedly contains some broad language, including the phrase "relating to" that broadens the applicability of the exception beyond claims that arise directly from a setoff. *See Coregis Ins. Co. v. Am. Health Found., Inc.*, 241 F.3d 123, 129 (2d Cir. 2001) (applying Ohio and Connecticut law, and observing that the plain meaning of the term "relating to" is "broader in scope" than the term "arising out of"); *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 389 (2d Cir. 2007) (distinguishing between the terms "arise out of" and "relate to"). The term "relating to" is akin to the phrases "in

---

Carolina setoff exception. *Id.* at 472. Were we to read the selection of New York courts as permissive, the North Carolina exception to jurisdiction in New York would be rendered superfluous.

connection with," "associated with," "with respect to," and "with reference to." *Coregis Ins. Co.*, 241 F.3d at 129.

Our analysis, however, does not end with consideration of this broad language. The North Carolina exception applies only to disputes arising out of or relating to a setoff "*pursuant to Section 7.08*" of the contract. Section 7.08 establishes three prerequisites for Monroe to exercise its contractual right to a setoff, namely, written notice to Whitaker that includes the basis for Monroe's claim to a setoff, a calculation of the setoff amount, and supporting documentation. None of these requirements were satisfied by the reservation of rights letter, which did not calculate the amount of a claimed setoff or provide supporting documentation. Thus, to the extent that Monroe's general reservation of rights indicated a "dispute" regarding a potential setoff, that dispute was not formalized "pursuant to Section 7.08," as required by the plain language of the contract. Nor did any later communications between the parties or Monroe's complaint filed in the Southern District of New York satisfy the requirements of Section 7.08. Indeed, Whitaker's allegations neither refer to Section 7.08 nor assert that its terms have been met. Instead, she alleges that her claims relate to a "potential" setoff.

Whitaker thus argues that the North Carolina exception applies because Monroe could assert a "possible" setoff claim or defense. Under this view, however, any claim against Monroe for nonpayment would "relate to" a "possible" setoff dispute, irrespective whether a setoff right had been asserted pursuant to Section 7.08 of the contract. Such an interpretation would read the phrase "pursuant to Section 7.08" out of the contractual

17

language, contrary to fundamental principles of New York contract law. *Law Debenture Tr. Co. of N.Y.*, 595 F.3d at 468.

Moreover, were we to adopt the broad position advanced by Whitaker, the North Carolina exception would swallow the default rule that "[a]ny legal suit, action, proceeding, or dispute arising out of or related to" the contract must be brought in state or federal court in New York. This outcome would "disrupt the parties' settled expectations" that New York would serve as the default forum for all claims, subject to a limited exception for disputes relating to setoffs. *Atl. Marine Constr. Co.*, 571 U.S. at 66. For these reasons, we conclude that Whitaker's lawsuit is not "arising out of or relating to a [Monroe] setoff pursuant to Section 7.08," and that the North Carolina exception in the contract's forum selection clause is not applicable.

Whitaker also has not offered any "exceptional" reasons that the public interest would be served better by refusing to enforce the parties' agreement to litigate this case in New York. *Id.* at 62, 64. We therefore will enforce the forum selection clause by directing the district court to transfer this case to the Southern District of New York pursuant to 28 U.S.C. § 1404(a).[8]

IV.

---

[8] In light of our holding, we decline to consider Monroe's other arguments in favor of dismissal, or Whitaker's request to amend her complaint. We leave these issues for consideration by the Southern District of New York should the parties choose to pursue them.

18

For these reasons, we conclude that Whitaker's claims are ripe for adjudication. Based on the contract's forum selection clause, we vacate the district court's judgment and remand with instructions that the court transfer this case to the Southern District of New York.

*VACATED AND REMANDED*
*WITH INSTRUCTIONS*

RICHARDSON, Circuit Judge, concurring in part and concurring in the judgment:

I agree with most of the majority's fine opinion: the claims were ripe in the district court and should have been transferred. I write separately only because I find a different path to reach the issue of ripeness.

First, I disagree with the majority's conclusion that *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94–95 (1998), requires us to first question ripeness before deciding to transfer under 28 U.S.C. §1404(a). *Steel Co.* requires that we place subject-matter jurisdiction before the merits in our decisional ordering. But non-merits, threshold issues may still be addressed before subject-matter jurisdiction. A § 1404(a) transfer is such a threshold issue.

In *Sinochem International Co. v. Malaysia International Shipping Corp.*, 549 U.S. 422, 432–35 (2007), the Supreme Court held that subject-matter jurisdiction need not be considered before a *forum non conveniens* dismissal. And *Sinochem* recognized that § 1404(a) codified the common-law doctrine of *forum non conveniens*, though with some modifications. *Id.* at 430; *see Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 253 (1981). Then in a later case, the Court held that a forum-selection clause "may be enforced through a motion to transfer under § 1404(a)" and also recognized that "the appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*." *Atl. Marine Constr. Co. v. U.S. Dist. Ct.*, 571 U.S. 49, 59–60 (2013). Reading *Sinochem* and *Atlantic Marine Construction* together suggests that *Steel Co.*'s judicial ordering permits addressing a § 1404(a) transfer motion under a forum-selection clause before resolving jurisdiction, just like a *forum non conveniens* dismissal.

20

*See Atl. Marine*, 571 U.S. at 61 ("[B]ecause both § 1404(a) and the *forum non conveniens* doctrine from which it derives entail the same balancing-of-interests standard, courts should evaluate a forum-selection clause pointing to a nonfederal forum in the same way that they evaluate a forum-selection clause pointing to a federal forum.").

Even so, the majority concludes that this particular § 1404(a) transfer motion cannot be treated as a threshold issue because it is "inextricably intertwined with the merits." But this conflicts with the Supreme Court's approach to evaluating when a court may rely on a "threshold ground[] for denying audience to a case on the merits" prior to considering its subject-matter jurisdiction. *Sinochem*, 549 U.S. at 431 (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 585 (1999)). Rather than perform a fact intensive, case-by-case analysis of which issues are "inextricably intertwined with the merits," the Supreme Court categorically analyzes which non-merits threshold issues may be addressed before looking to subject-matter jurisdiction. *See id.* at 431 (recognizing that dismissals based on *Younger* abstention, personal jurisdiction, and *Totten*, among others, can be considered before subject-matter jurisdiction as a categorical matter); *Ruhrgas AG*, 526 U.S. at 584–85 (holding, without qualification, that personal jurisdiction can be considered before subject-matter jurisdiction).

In contrast, the majority's approach leaves courts to separate threshold issues that involve a "brush with 'factual and legal issues of the underlying dispute,'" *Sinochem*, 549 U.S. at 433 (quoting *Van Cauwenberghe v. Biard*, 486 U.S. 517, 529 (1988)), from those that are inextricably intertwined with the merits. District courts will now face a difficult task in applying the majority's inextricably intertwined standard given its contradiction

21

with the Supreme Court's, and our own, routine blessing of threshold dismissals that require resolving factual or legal questions central to the plaintiff's claim.

For instance, in *Ruhrgas*, the plaintiff brought a fraud claim, among others, but the district court dismissed the case for lack of personal jurisdiction without considering its subject-matter jurisdiction. 526 U.S. at 579–80, 581 n.4. The Court upheld the personal-jurisdiction dismissal as a threshold non-merits dismissal, even though the Court recognized that the district court's holding hinged on the factual finding "that Marathon had not shown that Ruhrgas pursued the alleged pattern of fraud and misrepresentation during the Houston meetings." *Id.* at 581 n.4, 584–85. So *Ruhrgas* blessed a threshold dismissal that required resolving a factual question that went to the core of the plaintiff's claims. *See id.*; *see also Sinochem*, 549 U.S. at 433 ("[I]n ruling on the non-merits threshold question of personal jurisdiction, a court may be called upon to determine whether a defendant's contacts with the forum relate to the claim advanced by the plaintiff."); *id.* ("[A] court may need to identify the claims presented and the evidence relevant to adjudicating those issues to intelligently rule on a *forum non conveniens* motion.").

This Court has likewise blessed threshold dismissals that require considering factual and legal questions relevant to the plaintiff's claim—and has done so in circumstances nearly identical to those here. In *East Coast Repair & Fabrication, LLC v. United States ex rel. Department of the Navy*, 16 F.4th 87, 90 (4th Cir. 2021), this Court held that it could dismiss a case based on res judicata, without considering its subject-matter jurisdiction, even though its res judicata holding required it to interpret a settlement agreement and

22

associated contract setoff provision relevant to the merits. *Id.* at 91 ("The $473,600 setoff clearly 'relates' to the *Tempest* contract because the Navy withheld that amount as liquidated damages on the *Tempest* contract."). No discernible standard separates circumstances when the merits are "inextricably intertwined" from those that the Supreme Court, and this Court, have long blessed as appropriately disentangled.

While I disagree with the majority's path to addressing ripeness, I agree that we must do so before transferring this case under §1404(a). That is because the text of § 1404(a) demands that we transfer only to a court that would have subject-matter jurisdiction. And that statutory command requires us to consider whether the claims are ripe. So in the end I agree with the majority that we must consider ripeness; I just find that obligation in § 1404(a)'s statutory limitations.

The statute provides that without the parties' consent to a transfer, a district court may only "transfer any civil action to any other district or division where *it might have been brought*." § 1404(a) (emphasis added). And because claims cannot be brought without subject-matter jurisdiction, a transferee court must have subject-matter jurisdiction over the claim. *Hoffman v. Blaski*, 363 U.S. 335, 341–43 (1960); *see* Wright & Miller, Federal Practice & Procedure § 3845 (noting that § 1404(a) requires the transferee court to have subject-matter jurisdiction). Thus, we cannot instruct the district court to transfer this

23

case to the Southern District of New York without first considering whether the case is ripe for the Southern District of New York to hear.[*]

*Steel Co.* and its progeny have spun a web of confusion around the issues a court can decide and when. But we need not add to its complexity. Straightforward application of § 1404(a) already requires us to consider ripeness here. Once there, I agree with the majority that the claims are ripe and should be transferred.

---

[*] Although some have argued that transfer under § 1404(a) also requires the transferor court to first ensure its own subject-matter jurisdiction, we need not reach that question here. *See* Wright & Miller, *supra*, at n.19 and accompanying text. When the jurisdictional challenge relates to justiciability, there is no difference between the transferor and transferee's subject-matter jurisdiction because the jurisdiction of both courts arises from Article III.